23850

CHARLESTON COUNTY SCHOOL DISTRICT, Appellant
v. STATE BUDGET AND CONTROL BOARD, Respondent.
(437 S.E. (2d) 6)

Supreme Court

2

*Robert N. Rosen* and *Alice F. Paylor*, of *Rosen, Rosen & Hagood, P.A.,* Charleston, *for appellant.*

*Brad J. Waring, John Hamilton Smith,* and *Stephen P. Groves,* of *Young, Clement, Rivers & Tisdale,* Charleston; and *Charles R. Tuffley, Dennenberg, Tuffley & Jamison,* Southfield, MI, *for respondent.*

Heard Feb. 17, 1993. Decided May 3, 1993.

Refiled July 19, 1993.

TOAL, Justice:

The issues presented in this appeal are as follows: (1) is S.C. Code Ann. § 10-7-180 (1986), which sets forth an appraisal procedure for settling coverage disputes, applicable to insurance provided by the State Budget and Control Board; (2) if the appraisal procedure is applicable, did the State Budget and Control Board waive its right to the appraisal procedure; and (3) is the State Budget and Control Board subject to bad-faith claims under *Nichols v. State Farm Mutual Automobile Insurance Co.,* 279 S.C. 336, 306 S.E. (2d) 616 (1983).

## FACTS

On September 21, 1989, Hurricane Hugo struck Charleston County, damaging the buildings owned by Charleston County School District (hereinafter "District") and its contents. The District's property was covered under four policies of insurance provided by the State Budget and Control Board (hereinafter "Board"). The District notified the Board of the loss and then began repairing the damage. The Board advanced some funds to the District for the repairs. When the District

submitted a proof of loss claim, the Board asserted that the amounts claimed were, in part, based on costs to repair pre-existing damage due to the District's improper maintenance of the buildings, as well as other costs not covered by the policies, including architectural design fees, inspection fees, asbestos removal, and costs in excess of reasonable repairs or replacements. When the parties were unable to resolve their dispute, the District brought this breach of contract action and an action for bad-faith refusal to pay benefits under the insurance contract. The Board answered the complaint denying the allegations and asserting several affirmative defenses. Some limited discovery took place, including the exchange of unspecified documents and the deposition of the Assistant Division Director of the Division of Insurance for the Board.

The Board subsequently filed a motion to invoke its right to the appraisal procedure prescribed in S.C. Code Ann. § 10-7-180 (1986) along with a motion to dismiss the bad-faith claim. The trial court granted both motions. The District appeals.

## ISSUES

(1) Is the statutory appraisal provision of section 10-7-180, of the South Carolina Code, inapplicable to insurance provided by the Board pursuant to section 1-11-140?

(2) Did the Board waive its right to invoke the statutory appraisal procedure by entering into an insurance contract with a different appraisal procedure or by failing to timely raise the appraisal provision?

(3) Did the trial court err in dismissing the bad-faith claim?

## LAW/ANALYSIS

*Applicability of the Statutory Appraisal Provision to Contracts of Insurance Provided by the Board.*

S.C. Code Ann. § 1-11-140 (1986 & 1992 Supp.) authorizes the Board to provide insurance for the listed public entities and hospitals within the statute. In 1989, the statute was amended to add authorization for the Board to provide insurance on state public buildings, state-supported institutions, highway department buildings, public buildings of incorporated municipalities, public buildings of counties, school buildings, and school buses "as prescribed in §§ 10-7-10 through 10-

7-40, 59-67-710 and 59-67-790." S.C. Acts No. 389, Part II (1988). The District maintains that by expressly incorporating the above-cited sections, the legislature intended to exclude the applicability of §§ 10-7-50 through 10-7-230, which govern the methods for attaining insurance including the appraisal procedure of § 10-7-180, from insurance provided by the Board.

The cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature. *Bankers Trust of South Carolina v. Bruce*, 275 S.C. 35, 267 S.E. (2d) 424 (1980). It is clear the legislature's inclusion of §§ 10-7-10 through 10-7-40, 59-67-710, and 59-67-790 within the general provisions of § 1-11-140 was not intended to render all other provisions relating to insurance on public entities inapplicable, but merely delineated specific additional insurance coverage which the Board was authorized to provide. Additionally, finding the subsequent provisions inapplicable would lead to absurd results which would not be in the best interest of the Board. For example, the Board would lack the ability to reinsure the policies it issued as provided for by section 10-7-120, the premiums collected would not be required to be reserved by the Board as provided for by section 10-7-130, nor would the Board be required to reduce the premiums when the insurance reserve fund reached the sum of five per cent of the total insurance in force as provided for in section 10-7-140. Accordingly, we find the District's argument to be without merit.

*Waiver of the Appraisal Provision.*

Having found that the appraisal statute does apply to insurance provided by the Board, we turn to the question of whether the Board waived its right to invoke the appraisal statute. S.C. Code Ann. § 10-7-180 provides in part:

> [I]n the event of loss or damage, when an agreement as to the extent of such loss or damage cannot be arrived at between the Board and the officials having charge of the property, the amount of such loss or damage to be paid by the Board shall be determined by three appraisers, one to be named by the Board, one by the officer, official or trustee having the damaged or destroyed building in charge, and the third by the two so appointed.

The District maintains that the board waived § 10-7-180 when it entered into a contract with an alternative appraisal provision. We disagree. Mandatory statutory provisions relating to insurance contracts have long been held by this Court to be part of the contract, and any policy provision which controverts an applicable statute is, to that extent, invalid. *Jordan v. Aetna Casualty & Surety Company*, 264 S.C. 294, 214 S.E. (2d) 818 (1975).

The District further maintains the Board waived § 10-7-180 by failing to invoke it in a timely manner. We disagree. This statutorily mandated appraisal provision evidences the State's policy favoring the economical appraisal method of resolving disputes between two public entities. Its waiver, therefore, will not be lightly inferred. We agree with the trial court's determination that some showing of prejudice resulting from the delay is required. *Accord Carcich v. Rederi: A/B Nordie*, 389 F. (2d) 692 (2d Cir. 1968). The District argues it was prejudiced by the delay in that it participated in discovery which would not have been available under the appraisal provision. Any discovery conducted, however, presumably was related to the bad-faith claim as well; therefore, we find no prejudice arising from the Board's delay in invoking its statutory right to an appraisal.

*Bad-Faith Claim.*

The District argues the trial court erred in dismissing its badfaith claim. In *Nichols, supra*, this Court held if an insured can demonstrate bad faith or unreasonable action by the insurer in processing a claim under their mutually binding insurance contract, he can recover consequential damages in tort.

The Board argues it is not liable under a bad-faith claim, relying upon *Davis v. South Carolina Budget and Control Board*, 298 S.C. 135, 378 S.E. (2d) 604 (Ct. App. 1989), *cert. dismissed*, 301 S.C. 373, 392 S.E. (2d) 183 (1990). In *Davis*, the Court of Appeals held the State Insurance Reserve Fund was not required to offer underinsured motorist coverage to the state agencies and political subdivisions to which it provided motor vehicle liability coverage as the Insurance Reserve Fund was not an automobile insurance carrier for the purposes of S.C. Code § 38-77-160 (1989 & Supp.1992). The Board maintains under *Davis*, no general law regulating insur-

ance is applicable to it. We disagree. In *Wright v. Smallwood,* — S.C. —, 419 S.E. (2d) 219 (1992), we limited *Davis* to the statutory requirement that all automobile insurance carriers must offer optional underinsured motorist coverage and held the City of Columbia as a self-insurer must provide uninsured coverage. Accordingly, we hold the Board may be liable under a claim of bad-faith failure to pay a claim. *Accord* S.C. Code Ann. § 15-78-40 (Supp. 1992) (State agency is liable for its torts in the same manner and to the same extent as a private individual under like circumstances subject to the limitations contained with the South Carolina Tort Claims Act).

Nevertheless, we find no prejudice in dismissal of the bad-faith claim under the facts presented in this case.

As the Board is an agency as defined by the South Carolina Tort Claim Act, S.C. Code Ann. § 15-78-30(a) (Supp. 1992), the Act applies. No punitive damages are recoverable under the State Tort Claims Act. S.C. Code Ann. § 15-78-120(b) (Supp. 1992). Furthermore, the District would be limited to the statutory cap of $250,000 for any damages incurred as the result of the Board's alleged bad-faith refusal to pay benefits in a tort action. The District's damages under the bad-faith claim would necessarily include the insurance proceeds it alleges it is entitled to under breach of contract action. However, the District is entitled to recover its actual damages only once in either tort or contract. *Nichols, supra.* Since the insurance proceeds the District claims greatly exceed the statutory cap in the Tort Claim Act the District could not benefit from bringing the tort action in this case. *See also Dowling v. Home Buyers Warranty Corp.,* — S.C. —, 428 S.E. (2d) 709 (1993) (actual damages under breach of contract claim cannot support punitive damages under bad-faith tort claim when verdict did not provide for any actual damages in tort claim).

Relying on the *Bartlett v. Nationwide Mutual Fire Ins. Co.,* 290 S.C. 154, 348 S.E. (2d) 530 (Ct. App. 1986), *app. dismissed* 297 S.C. 73, 374 S.E. (2d) 897 (1989), and *Brown v. South Carolina Insurance Co.,* 284 S.C. 47, 324 S.E. (2d) 641 (Ct. App. 1984), *app. dismissed* 290 S.C. 154, 348 S.E. (2d) 530 (1985), in which our Court of Appeals suggested a bad-faith claim is one in contract, the District argues the South Carolina Tort Claim Act is inapplicable. We disagree. In *Nichols, supra,* we clearly held the cause of action was a

tort. To the extent *Bartlett* and *Brown* hold otherwise they hereby overruled. In *Bartlett*, the Court of Appeals found support for the position that it is a contract action in *York v. State Farm Mutual Automobile Insurance Co.*, 287 S.C. 164, 337 S.E. (2d) 210 (1985), in which we held this Court's acknowledgment of a bad-faith claim under *Nichols* had retroactive effect. The Court of Appeals reasoned if *Nichols* created a new tort, it would not apply to claims arising before that decision. Therefore, according to the Court of Appeals, *Nichols* merely created a new remedy for the violation of rights arising out of contract. The results in *York* did not hinge on characterizing the badfaith claim as one in contract instead of tort. To the contrary, this Court referred to the cause of action as a tort in *York. York*, 287 S.C. at 164, 337 S.E. (2d) at 211. The retroactivity of *Nichols* is appropriate because although an action for bad faith in an insurer's handling of a claim for first-party benefits had not been presented to the court prior to *Nichols*, the *Nichols'* results were clearly foreshadowed by earlier cases. As we noted in *Nichols*, the first-party cause of action is in reality merely a different aspect of the duty first identified by this Court in *Tyger River Pine Co. v. Maryland Casualty Co.*, 170 S.C. 286, 170 S.E. 346 (1993). In *Tyger River*, we held an insurer's unreasonable refusal to settle within policy limits subjects the insurer to liability. The application of the *Tyger River* Doctrine to an insurer's handling of a claim for first-party benefits was a natural extension of the policy behind the doctrine. Additionally, the federal courts had predicted the results of *Nichols* since 1979. *See Robertsen v. State Farm Mutual Automobile Ins. Co.*, 464 F. Supp. 876 (D.S.C. 1979); *see also Trimper v. Nationwide Ins. Co.*, 540 F. Supp. 1188 (D.S.C. 1982).

Accordingly, as an action in tort, the South Carolina Tort Claim Act applies and we find there was no prejudice from the dismissal of the bad-faith claim.

Affirmed.

HARWELL, C.J., and CHANDLER, FINNEY and MOORE, JJ. concur.