571 S.E.2d 700

The STATE, Appellant,

v.

Dante Ricardo SCOTT, Respondent.

No. 25541.

Supreme Court of South Carolina.

Heard June 13, 2002.

Decided Oct. 21, 2002.

Deputy Director for Legal Services Teresa A. Knox, Legal Counsel Tommy Evans, Jr., and Legal Counsel J. Benjamin Aplin, all of South Carolina Department of Probation, Parole & Pardon Services, of Columbia, for appellant.

Assistant Appellate Defender Tara S. Taggart, of South Carolina Office of Appellate Defense, of Columbia, for respondent.

Justice BURNETT:

The State appeals the circuit court's Order requiring the Department of Probation, Parole and Pardon Services ("Department") to release Dante Ricardo Scott ("Scott") from its Community Supervision Program ("CSP"). We reverse and remand.

## FACTS

Scott pled guilty to criminal conspiracy, common law robbery and kidnaping. He received a sentence of five years for criminal conspiracy. He was, additionally, sentenced concur-

rently to ten years for kidnaping and robbery, suspended upon confinement for three and one-half years and five years probation.

Scott served approximately 89.6% of the term of incarceration. Due to good conduct credits Scott "maxed out" his sentence, was released and placed in the CSP.

The State claims Scott violated the terms of his CSP nineteen times and failed to report for vocational rehabilitation.[1] The State sought to revoke his CSP.

At the revocation hearing, Scott argued he should be placed on probation, instead of CSP, because he "maxed out" his sentence. He further claimed he was not in violation of his probationary sentence because electronic monitoring was not a probationary condition. The circuit court judge agreed, terminated Scott's CSP and ordered the State to place him on probation. The State's motion for reconsideration was denied. The State appeals.

## ISSUES

I. Did the State properly and timely serve Scott with its notice of intent to appeal?

II. Did the circuit court err in terminating Scott's CSP and ordering him placed on probation?

## I

### Service of Notice of Intent to Appeal

Scott argues this Court lacks subject matter jurisdiction because the State failed to timely serve its notice of intent to appeal. *See* Rule 203, SCACR. We disagree.

Rule 203 requires the State serve a notice of appeal "within ten (10) days **after** receipt of written notice of entry of the order or judgment." Rule 203(b)(2), SCACR (emphasis added). The rule requires the State file the notice "with the clerk of the lower court and the clerk of the appellate court within

---

1. Along with participating in vocational rehabilitation, the community supervision conditions for Scott included intensive supervision and electronic monitoring not to exceed ninety (90) days.

ten (10) days **after notice of appeal is served.**" Rule 203(d)(2), SCACR (emphasis added).

The State received the circuit court's order denying reconsideration on July 18, 2000, served its notice of intent to appeal on July 21, 2000, and filed the notice with the South Carolina Court of Appeals and, erroneously, with the Clerk of Court of Richland County on the same date.[2] The State correctly filed its notice of appeal with the Clerk of Court of Lexington County on July 31, 2000.

The State timely served a notice of appeal on Scott. *See* Rule 203(b)(2), SCACR. The notice of appeal was timely filed with the Clerk of Court of the Court of Appeals and a corrected notice of appeal with the Clerk of Court of Lexington County within ten days after serving Scott. *See* Rule 203(d)(2), SCACR; *see also* Rule 234(a), SCACR ("In computing any period of time ... the day of the act ... after which the designated period of time begins to run is not to be included.").

Scott argues, however, the notice originally served on him incorrectly listed Richland County as the county from which the appeal was taken. As such, Scott believes the State failed to perfect service. We disagree.

■ While this Court has consistently held service of the notice of appeal is a jurisdictional requirement,[3] non-prejudicial clerical errors in the notice are not detrimental to the appeal. *Moody v. Dickinson,* 54 S.C. 526, 32 S.E. 563 (1899) (a court may allow an appellant to correct a mere clerical error in the notice of intention to appeal where there is no prejudice to the appellee); *see also Charleston Lumber Co., Inc. v. Miller Housing Corp.,* 318 S.C. 471, 458 S.E.2d 431 (Ct.App.1995).

■ It is undisputed Lexington County, rather than Richland County, was the proper county in which to file the notice. The State mistakenly filed in Richland County because Scott

---

2. This case, originally filed in the Court of Appeals, was transferred to this Court after submission of briefs but before oral arguments.

3. *Sadisco of Greenville, Inc. v. Greenville County Bd. of Zoning Appeals,* 340 S.C. 57, 59, 530 S.E.2d 383, 383 (2000).

was supervised in Richland, the warrant was initiated in Richland, the hearing took place in Richland, and the circuit court mistakenly cited Richland County in its Order. The citation of the incorrect county in such circumstances is a clerical error. Scott does not allege, nor do we discern, he was prejudiced by the error, which was corrected within 10 days of notice to Scott. We are, therefore, not deprived of subject matter jurisdiction. *See Charleston Lumber Co., Inc. v. Miller Housing Corp., supra.*

## II

### Termination of Community Supervision

Scott contends the circuit court properly terminated his CSP because the Department may not require him to participate in the program after he has maxed out his sentence for the "no parole" offense. We disagree.

The cardinal rule of statutory construction is a court must ascertain and give effect to the intent of the legislature. *Charleston County Sch. Dist. v. State Budget and Control Bd.*, 313 S.C. 1, 437 S.E.2d 6 (1993). "What a legislature says in the text of a statute is considered the best evidence of the legislative intent or will." Norman J. Singer, *Sutherland Statutory Construction* § 46.03 at 94 (5th ed.1992). If a statute's language is plain, unambiguous, and conveys a clear meaning "the rules of statutory interpretation are not needed and the court has no right to impose another meaning." *Hodges v. Rainey*, 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000).

Because Scott maxed out[4] the non-suspended portion of his sentence, with the benefit of good conduct credits, two

---

**4.** Scott argues that upon his release from his active sentence, his accumulated good conduct credits applied and were sufficient to "buy out" the remaining portion of his active sentence. He argues he was, therefore, entitled to receive probation immediately upon release. We reject this argument. The Legislature unequivocally requires all persons convicted of a "no parole offense" to participate in community supervision. Scott's argument suggests the need to address the relationship, if any, between good conduct credits and the requirements of CSP. This issue is better addressed in the legislative forum but, in any event, is not properly before us for review.

statutes are relevant to his situation. The first provides, in relevant part:

Notwithstanding any other provision of law, except in a case in which the death penalty or a term of life imprisonment is imposed, **any** sentence for a "no parole offense" as defined in Section 24–13–100 **must include** any term of incarceration **and** completion of a community supervision program operated by the Department of Probation, Parole and Pardon Services.

S.C.Code Ann. § 24–21–560 (Supp.2001) (emphasis added).

The second statute, concerning individuals who max out the active part of their sentence with the benefit of good conduct credits, provides, in relevant part:

Any person who has served the term of imprisonment for which he has been sentenced less deductions allowed therefrom for good conduct is considered upon release to have served the entire term for which he was sentenced **unless** the person is required to complete a community supervision program pursuant to Section 24–21–560. If the person is required to complete a community supervision program, he must complete his sentence as provided in Section 24–21–560 prior to discharge from the criminal justice system.

S.C.Code Ann. § 24–13–210(E).

Scott incorrectly asserts the section "simply sets out the legal framework for the CSP when it is made a part of an offender's 'no parole offense' sentence." The use of the words "must" along with the conjunction "and" indicate Scott's sentence for kidnaping requires a term of incarceration along with completion of a CSP. *See Hodges v. Rainey, supra; Mitchell v. Holler,* 311 S.C. 406, 410, 429 S.E.2d 793, 795 (1993) ("The words of a statute must be given their plain and ordinary meaning without resorting to subtle or forced construction to limit or expand a statute's operation.").

In the second statute, the word "unless" indicates a "no parole" offender has not completed his sentence, when using the benefit of good conduct credits, until completing the CSP. Scott was incarcerated for approximately 90% of the non-suspended portion of his sentence and was eligible for commu-

nity supervision.[5] Scott took advantage of good conduct credits to max out his 3½ year sentence. *See* S.C.Code Ann. § 24–13–210 and § 24–13–220.

Contrary to Scott's argument, § 24–13–210 does not apply "only to offenders who had at a minimum served eighty-five percent of their sentences." Instead, the section applies to any "no parole" offender who statutorily maxes out his sentence with the benefit of good conduct credits.[6]

Under § 24–13–210, Scott has not served his entire active term of incarceration until he completes a CSP. The circuit court lacked the authority to terminate Scott's CSP. On remand, the circuit court shall determine whether Scott violated the conditions of his CSP and consider any violation in accordance with S.C.Code Ann. § 24–21–560(C) (Supp.2001).

## CONCLUSION

For the reasons articulated above we **REVERSE** and **REMAND.**

TOAL, C.J., MOORE and WALLER, JJ., concur.
PLEICONES, J., concurring in result only.

---

5. An individual convicted of a "no parole offense" must serve 85% of the "actual term of imprisonment imposed," less any part suspended, before becoming eligible for community supervision. *See* S.C.Code Ann. § 24–13–150(A)(Supp.2001). "This percentage must be calculated without the application of earned work credits, education credits, or good conduct credits, and is to be applied to the actual term of imprisonment imposed, not including any portion of the sentence which is suspended." S.C.Code Ann. § 24–13–150(A) (Supp.2002).

6. An issue of concern is whether a "no parole" offense can include a probationary segment and how probation relates to CSP. A benefit of probation in such cases is it provides a vehicle to enforce a restitution order. *See Barlet v. State*, 288 S.C. 481, 343 S.E.2d 620 (1986) (defendant's probation may be revoked for wilfully failing to pay restitution). However, because the issue is not preserved for review we do not address whether trial courts may use probation for "no parole" offenses or whether they may instead require restitution as a condition of CSP. *See State v. Bailey*, 298 S.C. 1, 377 S.E.2d 581 (1989).