749 S.E.2d 516

**The STATE of South Carolina and the South Carolina Department of Revenue, Petitioners,**

v.

**COUNTY OF FLORENCE, Florence County Council, and the Florence County Registration and Elections Commission, Respondents.**

**Appellate Case No. 2013–001868.**

**No. 27323.**

Supreme Court of South Carolina.

Heard Oct. 1, 2013.

Decided Oct. 17, 2013.

Harry T. Cooper, Jr. and Milton Gary Kimpson, both of Columbia, for South Carolina Department of Revenue; Deputy Solicitor General Robert D. Cook and Deputy Solicitor General J. Emory Smith, Jr., of the Office of Attorney General, of Columbia, for Petitioners State of South Carolina and South Carolina Department of Revenue.

D. Malloy McEachin, Jr., of McEachin & McEachin, P.A., of Florence; John Carroll Moylan III, of Wyche, PA, of Columbia; and Wade Stackhouse Kolb III, and J. Theodore Gentry, both of Wyche, PA, of Greenville, for Respondents County of Florence, Florence County Council and the Florence County Registration and Elections Commission.

Austin J. Tothacer, Jr., of Newberry, for Newberry County, South Carolina, Amicus Curiae.

Robert E. Lyon, Jr., John K. DeLoache and Jenna L. Stephens, all of Columbia, for South Carolina Association of Counties, Amicus Curiae.

Chief Justice TOAL.

This case is before the Court in its original jurisdiction. The State and the South Carolina Department of Revenue (DOR)[1] (collectively, Petitioners) request this Court declare a proposed tax referendum invalid under the Capital Project Sales Tax Act, sections 4–10–300 to –380 of the South Carolina Code (the Act),[2] and enjoin the County of Florence, Florence

---

1. DOR is the agency charged with administering and collecting the tax. S.C.Code Ann. § 4–10–350(A) (2013).

2. S.C.Code Ann. §§ 4–10–300 to –380 (Supp.2012).

County Council, and Florence County Registration and Elections Commission (the Commission)[3] (collectively, Respondents) from placing the proposed referendum on the ballot at the November 5 county elections. We find Respondents actions valid pursuant to the Act, and deny Petitioners' request for an injunction, thereby permitting the tax referendum to go forward on November 5.

## FACTS/PROCEDURAL BACKGROUND

On November 7, 2006, Florence County held a countywide referendum to approve the imposition of a one percent sales and use tax to raise $148 million for six road projects. Florence County voters approved the following referendum:

Must a special one percent sales and use tax be imposed in Florence County for not more than seven (7) years to raise the amounts specified for the following purposes: $148,000,000.00 for the Florence County Road Project ('the Project') with the individual components of the Project to be funded in the following order of priority. . . .

The tax is scheduled to terminate on April 30, 2014.

Although the tax has been collected since 2006, Petitioners assert that only one of the road projects has been completed. According to Petitioners, as of January 31, 2013, only $35.6 million of the $447.6 million projected tax revenue had been expended on the project, and the remaining revenue will be insufficient to complete the projects.[4]

---

3. The Commission is charged with conducting the referendum. S.C.Code Ann. § 4–10–330(C) (2013).

4. Petitioners allege the total revenue from the tax will fall $50 million short of the cost to complete the remainder of the projects. To support this claim, Petitioners submitted the affidavit of a DOR employee who projects the 2006 referendum will collect $141,800,377.68 as of April 2014, falling short of the $148 million earmarked for the road projects in the 2006 referendum. Unexpended funds collected from the 2006 tax are escrowed in a separate interest bearing account. However, the affiant admits that her calculations did not include any interest accrued by the funds. Petitioners further allege that funding has been secured from the State Transportation Infrastructure Bank to complete the projects, but even so, there is still a funding shortfall. On the other hand, Respondents have submitted an affidavit from the Finance Director for Florence County indicating the tax approved in 2006, with

Florence County Council has now enacted an ordinance approving a referendum for a one percent sales tax to be placed on the ballot on November 5, 2013. The question posed by the proposed referendum is nearly identical to the 2006 referendum, except that Respondents seek to raise $145 million dollars for entirely different projects than those listed in the 2006 referendum and have not provided for the completion of those projects in the proposed referendum.

Petitioners filed a petition in the Court's original jurisdiction, seeking a declaration that the proposed tax is invalid and to enjoin the referendum.[5]

This Court granted Petitioners' petition for writ of certiorari pursuant to Rule 245, SCACR.

### ISSUE

Whether the Act permits Florence County to place the proposed tax referendum on the November 5, 2013, ballot?

### ANALYSIS

### I. Classification of the Tax as "New" or "Reimposed"

■ Petitioners contend the Act prevents Florence County from holding the referendum on November 5 because the referendum covers entirely new projects than those that were voted on in the 2006 referendum, which they claim are incomplete and have not been fully funded, and as such, the tax is "new" and not "reimposed." On the other hand, Respondents argue that they have complied with the express terms of the statute, in that the Act provides for the reimposition of the tax to continue funding for additional county projects without interruption.

■ "The cardinal rule of statutory construction is a court must ascertain and give effect to the intent of the legislature." *State v. Scott,* 351 S.C. 584, 588, 571 S.E.2d 700, 702 (2002) (citing *Charleston Cnty. Sch. Dist. v. State Budget & Control Bd.,* 313 S.C. 1, 437 S.E.2d 6 (1993)); *Florence*

---

interest, will raise at least $148 million by April 30, 2014, all of which will be devoted to the road projects listed in the 2006 referendum.

5. Petitioners initially sought a temporary injunction, which the Court denied in the order granting the writ of certiorari.

*Cnty. Democratic Party v. Florence Cnty. Republican Party*, 398 S.C. 124, 128, 727 S.E.2d 418, 420 (2012). "What a legislature says in the text of a statute is considered the best evidence of the legislative intent or will." *Scott*, 351 S.C. at 588, 571 S.E.2d at 702 (quoting Norman J. Singer, *Sutherland Statutory Construction* § 46.03 at 94 (5th ed.1992)). Therefore, "[i]f a statute's language is plain, unambiguous, and conveys a clear meaning 'the rules of statutory interpretation are not needed and the court has no right to impose another meaning.' " *Id.* (quoting *Hodges v. Rainey*, 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000)); *see also State v. Pittman*, 373 S.C. 527, 561, 647 S.E.2d 144, 161 (2007) ("All rules of statutory construction are subservient to the maxim that legislative intent must prevail if it can be reasonably discovered in the language used.") (citing *McClanahan v. Richland Cnty. Council*, 350 S.C. 433, 438, 567 S.E.2d 240, 242 (2002)). The Court must construe statutory language in light of the intended purpose of the statute, and "[t]his Court will not construe a statute in a way which leads to an absurd result or renders it meaningless." *Florence Cnty. Democratic Party*, 398 S.C. at 128, 727 S.E.2d at 420.

Pursuant to section 4–10–310,

[T]he county governing body may impose a one percent sales and use tax by ordinance, subject to a referendum, within the county area for a specific purpose or purposes and for a limited amount of time. The revenues collected pursuant to this article may be used to defray debt service on bonds issued to pay for projects authorized in this article. However, at no time may any portion of the county area be subject to more than one percent sales tax levied pursuant to this article, pursuant to Chapter 37, Title 4, or pursuant to any local law enacted by the General Assembly.

S.C.Code Ann. § 4–10–310 (2013).

Section 4–10–330 sets forth the required content of a tax referendum ballot and describes the permitted purposes of such a tax raised under the Act. For example, subsection (A) requires that the ballot contain: (1) the contents of the enacting ordinance, which specifies the purpose of the tax and the permitted types of projects; (2) the maximum time for which the proposed tax will be imposed, not to exceed eight

years from the date of imposition "or in the case of a reimposed tax, a period ending on April thirtieth of an odd-numbered year, not to exceed seven years, for which the tax may be imposed"; (3) whether the county proposes to issue bonds for the payment of any costs of the project and how the county proposes to repay those bonds; and (4) the maximum cost of the project. S.C.Code Ann. § 4–10–330(A). Moreover, the ordinance must set forth the priority of funds to be used for multiple projects. *Id.* § 4–10–330(B). Under subsection (C), a county election commission is charged with conducting a "referendum for imposition or reimposition of the tax" which "must be held at the time of the general election unless the vote is to reimpose a tax in effect on or before June 1, 2009, and in existence at the time of such vote, in which case the referendum may be held on a general election day or at a time the governing body of the county and [DOR] determine necessary to permit the tax to be reinstated and continue without interruption." *Id.* § 4–10–330(C). The governing body of the county may select the timing of the election. *Id.* "However, a referendum to reimpose an existing tax … only may be held once whether or not the referendum is held on a general election day or at another time." *Id.* In addition, section 4–10–340 provides for the tax imposition and termination as follows:

(A) If the sales and use tax is approved in the referendum, the tax is imposed on the first of May following the date of the referendum. If the reimposition of an existing sales and use tax imposed pursuant to this article is approved in the referendum, the new tax is imposed immediately following the termination of the earlier imposed tax and the reimposed tax terminates on the thirtieth of April in an odd-numbered year, not to exceed seven years from the date of reimposition. If the certification is not timely made to the Department of Revenue, the imposition is postponed for twelve months.

(B) The tax terminates the final day of the maximum time period specified for the imposition.

(C)(1) Amounts collected in excess of the required net proceeds must first be applied, if necessary, to complete a project for which the tax was imposed.

(2) If funds still remain after first using the funds as described in item (1) and the tax is reimposed, the remaining funds must be used to fund the projects approved by the voters in the referendum to reimpose the tax, in priority order as the projects appeared on the enacting ordinance. (3) If funds still remain after first using the funds as described in item (1) and the tax is not reimposed, the remaining funds must be used for the purposes set forth in Section 4–10–330(A)(1). These remaining funds only may be expended for the purposes set forth in Section 4–10–330(A)(1) following an ordinance specifying the authorized purpose or purposes for which the funds will be used. S.C.Code Ann. § 4–10–340 (2013).

In the instant case, Respondents have complied with the express requirements of the Act with respect to the tax's reimposition. However, based on the statutory language, Petitioners argue that the legislature has expressed its intent that a new tax and a reimposed tax "are not interchangeable or the same under the law." Moreover, Petitioners contend that these provisions, coupled with fact that the legislature amended the Act to allow for reimposition,[6] demonstrate that

---

6. In 1997, the General Assembly authorized the imposition of the capital sales and use tax by enacting the Act. *See* Act No. 138, § 3, 1997 S.C. Acts. As originally constituted, the Act provided for the imposition of the tax for a limited time to collect a limited amount of money and to terminate at the earlier of the final date specified in the referendum or once the revenue collected by DOR exceeded the projected funds designated in the referendum. In 2002, the General Assembly sought to fix problems created by the failure of the Act to address a gap in funding where counties sought to continue to raise revenue. The 2002 amendments allowed for reimposition of an existing sales and use tax imposed pursuant to the Act. *See* Act No. 334, §§ 22.A–22.F, 2002 S.C. Acts. Petitioners contend that the 2002 amendments "authorizing reimposition[ ] and treating reimposition differently from initial imposition, clearly were designed to serve as a remedy for underfunding or unanticipated cost overruns which might be incurred in completing the initially approved projects." In 2009, the General Assembly again amended the Act to provide for a process to address excess funds raised by the tax. *See* Act No. 49, 2009 S.C. Acts. According to Petitioners, the 2009 amendments "mandate[ ] that, if voters approved reimposition, then only following completion of the initial projects, were the counties allowed to utilize surplus monies for any new projects in the reimposition referendum." Thus, Petitioners contend, Florence County has ignored the intent behind the reimposition amendments and has decided to abort funding for the original projects prior to completion,

"a reimposed or continued tax is one that continues the original tax including its purposes" and that "[t]he tax at issue does not do so and is a new tax rather than a reimposed tax."

The distinction that Petitioners attempt to draw between a new and reimposed tax is important only with regard to the timing of a proposed referendum, as the statute clearly distinguishes between the timing of the imposition of a capital sales tax and its reimposition at a later date. Thus, Petitioners place too much emphasis on semantics. In other words, a reimposition *is* a new tax, as it is scheduled to be levied following the initial tax and a county is only permitted to levy one tax at a time.

## II. Completion of Original Projects

■ Petitioners further contend that, regardless of whether the Court classifies the proposed tax as new or reimposed, the Act, specifically section 4–10–340(C), precludes Respondents from seeking to continue the tax to fund new projects where the projects originally authorized have not been completed, the revenue raised by the original tax is insufficient to fund them, and the new tax is earmarked for a different set of projects. We disagree.

Section 4–10–340(C)(1) provides, "Amounts collected in excess of the required net proceeds must first be applied, if necessary, to complete a project for which the tax was imposed." S.C.Code Ann. § 4–10–340(C)(1). Moreover, "[i]f funds still remain after first using the funds as described in item (1) and the tax is reimposed, the remaining funds must be used to fund the projects approved by the voters in the

seeking to use the reimposition process to fund entirely new capital projects, which "is essentially imposing a new tax in a non-General Election year, but calling it a reimposition of the existing tax." While Petitioners' attempt to distinguish between the purposes of a new and reimposed tax makes logical sense, the wording of the Act does not support their interpretation. *See Scott*, 351 S.C. at 588, 571 S.E.2d at 702 (stating the plain language of the statute is the best indicator of legislative intent and where the statute's language is plain, a court should not resort to the rules of statutory construction). The Act does not speak to required purposes, other than to require a referendum to specify its purposes. Thus, the fact that the legislature made changes to the Act over time does not influence how we interpret its provisions today.

referendum to reimpose the tax, in priority of order as the projects appear on the enacting ordinance." *Id.* § 4–10–340(C)(2).

Petitioners contend that subsections (C)(1) and (C)(2) must be read in progression to ensure that "counties must first finish what they started by funding what they began originally in going to the voters." In other words, this language can have no reasonable meaning other than that all net proceeds collected over the required amount submitted to the voters are earmarked first to complete the initial projects. Petitioners contend that the purpose of subsection (C)(1) is to require a remedial measure when the original project is not completed or is underfunded. Likewise, Petitioners argue that the clear language of subsection (C)(2) can only mean that "a county must complete initial projects first, and then must use 'remaining funds' for the items approved in the reimposition referendum—in the order of priority which the voters approved." On the other hand, Respondents contend that section 4–10–340(C) "governs one situation and one situation only—what to do when there are excess funds raised through a [tax] referendum."

We find subsection (C)(1) inapplicable in the instant case because that section expressly applies only when a county collects revenue *in excess* of the funds necessary to complete the projects approved in that referendum. This provision does not require the completion of those projects identified in a referendum, nor does it make completion a prerequisite for reimposition. Furthermore, subsection (C)(2) does not require a tax reimposition include the original projects, instead referring to the projects "approved by the voters in the referendum to reimpose the tax," which implies that a reimposition may have its own set of projects. Moreover, "remaining funds" refers to excess funds raised by the original tax, not to funds raised by the reimposition, and the subsection plainly requires those excess funds be applied towards projects identified in the reimposition referendum. Thus, contrary to Petitioners' assertion, section 4–10–340(C) does not require a county to apply funds raised by the reimposition of the tax towards completion of projects identified in the original tax.

Finally, we note that while the Act permits the original tax to be imposed for a maximum of eight years, *see* section 4–10–330(A)(2), the Act does not require the completion of the project described in a referendum within that period. Moreover, Petitioners have not presented evidence that the original projects will not be completed. In our view, the Act permits a county to reimpose the tax at each opportunity without ever completing the projects set forth in the previous referendum. If and when a county does not complete a project for which the voters approved a tax, then the voters may decide whether they wish to continue the tax to fund another project.

## C. *Election Date*

One of the primary issues that Petitioners raise with respect to the proposed referendum is that they believe it is improperly scheduled concurrent with the November 5, 2013, county elections. Petitioners contend that Respondents may not place the referendum on the ballot until the "general election" of 2014, as the tax is for new projects and not a reimposition of the tax to complete the original projects.

Section 4–10–330(C) provides that a

referendum for imposition or reimposition of the tax must be held at the time of the general election unless the vote is to reimpose a tax in effect on or before June 1, 2009, and in existence at the time of such vote, in which case the referendum may be held on a general election day or at a time the governing body of the county and the Department of Revenue determine necessary to permit the tax to be reinstated and continue without interruption.

S.C.Code Ann. § 4–10–330(C).

In our view, Respondents seek to reimpose a tax that was instituted prior to 2009. Therefore, the referendum may be placed on the November 5 ballot, as that is the time for which the governing body of the county has deemed such vote necessary to continue the tax without interruption.

Regardless, we note that the November 5th election *is* a general election, not a special election.[7] The Act does not

---

7. Petitioners do not explain why the upcoming election is not a general election. It appears that Petitioners are classifying the upcoming election as a special election because it is not a federal election year.

define "general election." Therefore, we turn to our general election statutes to inform its meaning. *See Joiner ex rel. Rivas v. Rivas*, 342 S.C. 102, 109, 536 S.E.2d 372, 375 (2000) ("It is well settled that statutes dealing with the same subject matter are in *pari materia* and must be construed together, if possible, to produce a single, harmonious result."); *Denman v. City of Columbia*, 387 S.C. 131, 138, 691 S.E.2d 465, 468 (2010).

Section 7–1–20(1) of the South Carolina Code provides, " 'General election' means the election to be held for the election of officers to the regular terms of office provided by law, whether State, United States, county, municipal, or of any other political subdivision of the State, and for voting on constitutional amendments proposed by the General Assembly." S.C.Code Ann. § 7–1–20(1) (Supp.2012). The general election occurs on the first Tuesday following the first Monday in November. *Willis v. Wukela*, 379 S.C. 126, 130, 665 S.E.2d 171, 173 (2008). Because the November 5 election is an election to vote on county offices, it is a general election; as such, Respondents are entitled to hold the referendum on November 5, 2013.[8]

## CONCLUSION

We take no side with respect to the policy considerations at stake, as the parties present valid reasons for the opposing interpretations they seek. However, Petitioners ask us to augment the statutory language to include a requirement for completion of prior projects where the Act does not set forth such a requirement, and we are constrained to interpret the Act's provisions by their plain terms. *Grier v. AMISUB of S.C., Inc.*, 397 S.C. 532, 540, 725 S.E.2d 693, 698 (2012) ("Nevertheless, the statute is unambiguous and we are confined to what the statute says, not what it ought to say, for we have no right to modify a statute's application 'under the guise

8. The requirement that an initial tax referendum be held at the time of a general election means a *special election* may not be held for a referendum under the Act unless it is for a reimposition of a tax, the date of which is selected by the governing body of the county. *See* S.C.Code Ann. § 4–10–330(C). The general election provisions define "special election" as "any other election including any referendum provided by law to be held under the provisions of law applicable to general elections." S.C.Code Ann. § 7–1–20(2).

of judicial interpretation.' In other words, when a statute is clear on its face, it is 'improvident to judicially engraft extra requirements to legislation' just because doing so may further the intent behind the statute.") (citations omitted). Thus, we find the Act does not prevent Respondents from putting the referendum to the voters now, even though Florence County cannot raise the funds necessary to complete the new projects until the tax for the original projects expires.

Based on the foregoing, Petitioners' request for an injunction is **DENIED.**

PLEICONES, BEATTY, KITTREDGE and HEARN, JJ., concur.