[No. C031512. Third Dist. Sept. 21, 1999.]

CALIFORNIA CASUALTY INDEMNITY EXCHANGE, Plaintiff and Appellant, v.
NELLIE MARY FRERICHS, Defendant and Respondent.

## COUNSEL

Farmer & Murphy, Blane A. Smith and Mark D. Smith for Plaintiff and Appellant.

Douglas K. Ashby and Donna J. Peter for Defendant and Respondent.

## OPINION

**BLEASE, J.**—This is an appeal from a judgment in an action for declaratory relief brought by plaintiff California Casualty Indemnity Exchange (California Casualty) concerning the interpretation of a policy of homeowners insurance.

The defendant was injured by Paul Hudson (Hudson), the adult son of the homeowners, the named insureds on a policy issued by California Casualty. At issue is whether Hudson is also an insured for purpose of the coverage clause of the policy. The judgment declares that Hudson, who was house-sitting during his parents' vacation, is a "resident[] of [their] household" and hence within the definition of an insured under the policy.

The term "resident[] of [their] household" is used to define an additional insured under both liability coverage and exclusion clauses of the policy and there is nothing to show the meaning changes with the location. In general, coverage clauses are construed broadly and exclusion clauses narrowly against the insurer to protect the reasonable expectations of the named insured. These rules have no application here because they conflict, even on the view the named insureds expect coverage for their relative. In this circumstance we give "resident[] of [their] household" its ordinary meaning as to dwell permanently or for a considerable length of time.

Since Hudson does not fit that construction, we will reverse the judgment.

### FACTS AND PROCEDURAL BACKGROUND

On July 26, 1996, Hudson (age 41 at trial) was staying at his parents' house in Yuba City because they were on vacation for two or two and one-half weeks. That day, while riding his bicycle from the restaurant where he worked to his parents' house, he collided with a pedestrian, Nellie Mary Frerichs, allegedly injuring her wrist.

His parents bought the house about four years earlier. The California Casualty homeowners policy in issue was purchased through a mortgage impound account. His mother, Darlene Hudson, testified she had never read the policy.

As will appear in the Discussion, the term "residents of your household" defines an additional insured in both liability coverage and exclusion clauses of the policy.

Hudson came to Yuba City in November 1993 and lived full-time with his parents until November 1995. He testified that thereafter he did not have a "full-time residence." "I stayed at friend's houses, women that I slept with, friends of mine, guys that were friends where I would stay while I was looking for an apartment." Pressed for details, he maintained: "I can't tell you exactly but there were different women that I saw. I would stay at their house. There were friends of mine, I would crash on their couch and occasionally I would return home and stay at my parents'."

When asked by a police officer for his home address and telephone number at the accident scene he provided his parents' address and telephone number. He also gave that as his home address and telephone number when he applied for his employment in May 1996. He sometimes had an item of his mail delivered at his parents' home throughout the pertinent time period.

During the time he was house-sitting he kept most of his personal possessions in his car, parked nearby. No room in the house was reserved for his use; he slept in the spare bedroom, or on the couch in the living room.

On June 5, 1998, California Casualty filed a complaint for declaratory relief commencing this action. The complaint names Frerichs and Hudson as defendants. It alleges that Hudson is not covered under the policy with respect to the personal injury action filed by Frerichs against Hudson for damages arising out of the collision. The matter eventually proceeded to a jury trial as to Frerichs. The jury returned a special verdict answering yes to the question: "was Paul Martin Hudson a resident of the household [of his parents on the day of the accident with Frerichs]?" and judgment was entered in Frerichs's favor.

California Casualty appeals.

## DISCUSSION

California Casualty contends the trial court erred in referring the question to the jury whether the policy term "resident" is ambiguous. For the reasons that follow, we agree and will reverse the judgment in Frerichs's favor.

## I

■    Notwithstanding that an action for declaratory relief is characterized as an action in equity, there is a right to a jury trial of material triable issues of fact concerning an inchoate breach of contract claim. (See, e.g., *Manneck v. Lawyers Title Ins. Corp.* (1994) 28 Cal.App.4th 1294, 1299-1301 [33 Cal.Rptr.2d 771].) For example, if an insurance policy is ambiguous, and the resolution of the ambiguity turns on disputed extrinsic evidence, the dispute must be resolved by a jury upon demand. (See *ibid.*) However, where the only question concerns a facial application of the (written) policy in the absence of a material triable issue of fact, the matter is within the purview of the appellate court. (See *ibid.*; see generally, *Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 866 [44 Cal.Rptr. 767, 402 P.2d 839].) Thus, we turn to the meaning of the policy on the undisputed *material* facts.

## II

As this court observed in *National Auto. & Cas. Ins. Co. v. Underwood* (1992) 9 Cal.App.4th 31, 39 [11 Cal.Rptr.2d 316] (*Underwood*), the term "household resident" has been construed in various ways and the field is "muddled."[1] Some of the difficulty arises because of the overlap between the ordinary usage of "residence" and the jural concepts of "residence" and "domicile." (See, e.g., *Smith v. Smith* (1955) 45 Cal.2d 235, 239-240 [288 P.2d 497].)

■    A principal determinant of meaning of insurance policies is whether the question is one of coverage or exclusion. (See *Underwood, supra,* 9 Cal.App.4th at p. 39.) This is attributable to the fundamental canon of construction of an insurance policy that an ambiguity is resolved against the insurer. (*Id.* at p. 38.) The purpose of this rule is " 'to protect the insured's reasonable expectation of coverage in a situation in which the insurer-draft[er] controls the language of the policy. [Citations.] Its effect differs, depending on whether the language to be construed is found in a clause providing coverage or in one limiting coverage.' " (*Ibid.*, original brackets, quoting from *Reserve Insurance Co. v. Pisciotta* (1982) 30 Cal.3d 800, 808 [180 Cal.Rptr. 628, 640 P.2d 764].)

That can be seen in the provisions of the California Casualty policy. It contains the following principal pertinent provisions.

---

[1] " 'Residence, as used in the law, is a most elusive and indefinite term.' (*Briggs v. Superior Court* [(1947)] 81 Cal.App.2d 240, 245 [183 P.2d 758, 762].) The writer in Corpus Juris Secundum says that the word 'is like a slippery eel.' (77 C.J.S., Residence, p. 289, fn. 54 in pocket part.) It has various meanings for varying legal concepts and under different statutes, depending upon the purpose involved." (*In re Morelli* (1970) 11 Cal.App.3d 819, 830 [91 Cal.Rptr. 72].)

"Definitions

"3. 'Insured' means you and the following residents of your household: [¶] a. Your relatives;

".    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"Section II—Liability Coverages

"Coverage E—Personal Liability

"If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage caused by an occurrence to which this coverage applies, we will:

"1. Pay up to our limit of liability for the damages for which the insured is legally liable;

".    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

Section II - Exclusions

".    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"2. Coverage E - Personal Liability does not apply to:

".    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"f. Bodily injury to you and an insured within the meaning of part a. or b. of Definition 3 'Insured'[.]"

■ For purposes of "the insured's reasonable expectation of coverage," the "insured" is the person contracting for the insurance, to wit the named insured. (See *Reserve Insurance Co.* v. *Pisciotta, supra,* 30 Cal.3d at p. 809.) In this case "the insureds" are Hudson's parents. Thus, we apply the canon to the meaning of "residents of your household" in the policy definition of "insured" to vindicate their expectations, not Hudson's expectations. Although the question here is one of coverage, it is not a question of coverage of the "insured" in the sense of the named insured who contracts for the insurance.

In ascertaining the reading of the policy language most favorable to Hudson's parents as the "insureds" we examine the entire policy, since the

policy term "insured" is defined to include "relatives" who are "residents of [the] household" in the provisions for both coverage and exclusion.

The problem bears some similarity to *Jenkins* v. *Tuneup Masters* (1987) 190 Cal.App.3d 1, 7 [235 Cal.Rptr. 214]. The question concerned the construction of an ambiguous provision in a lease specifying the notice required for the exercise of an option. The landlords sought to resolve the ambiguity by applying the canon that the language of the contract should be construed against the party causing the ambiguity. We held that since the notice provision applied to landlord and tenant alike, it could not be read against either party. "The landlords point to Civil Code section 1654 which says that, if the other canons of interpretation do not resolve uncertainty, the language of the contract should be read against the party causing uncertainty. They note that Tuneup Masters supplied the lease form. Section 1654 does not aid the landlords. The notice provision applies to all notices under the lease, those of landlord and tenant alike, and not just to a notice of exercise of an option. Accordingly, the meaning cannot be read against either party for the reason that the meaning cannot change dependent upon the interests served in a particular controversy. Hence a univocal reading against the drafter is unavailable."

In this case the term "resident" appears in both the coverage and exclusion provisions of the policy and there is nothing to show the meaning changes with its location. Like *Tuneup* its meaning cannot change according to the interests served in a particular controversy. Hence, we must ascribe the same meaning to both provisions.

The coverage and exclusion provisions serve different interests. If Hudson is deemed an insured as a "resident[] of [his parent's] household" his interests are served for purposes of the coverage of *his* liability. By the same definition, under the exclusion clause a bodily injury to him is *excluded* from coverage for purposes of the coverage of his *parents'* liability. Thus, for example, in an action by Hudson against his parents for an injury occurring to him on his parents' premises arising under *Rowland* v. *Christian* (1968) 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496], his parents would *not* be covered and thus not protected from liability if Hudson is deemed an insured.

As related, it is the interests of the parents as parties to the contract of insurance that drive the application of the canon that ambiguity should be construed in favor of the insured. In these circumstances, the vindication of the parents' interests as named insureds would direct that an ambiguity in the

term "residents of your household" in the exclusion clause be resolved by a narrow definition. Even if one of the parents' interests was in extending coverage for the liability of relatives potentially within the ambit of "residents of [the] household" the term should be given its ordinary reading, free from unusual extending or limiting connotations. (See *Jenkins* v. *Tuneup Masters, supra*, 190 Cal.App.3d 1.)

It suffices to say that, in the circumstances shown at trial, Hudson is not a "resident[] of [his parents'] household" within the ordinary usage of those terms. To reside is: "To dwell permanently or for a considerable time, to have one's settled or usual abode, to live, in or at a particular place." (8 Oxford English Dict. (1933) p. 517.)[2] Given this meaning Hudson stopped residing with his parents in November 1995 and his housesitting for two weeks was not a taking up of residence.

In light of this conclusion, none of the other points raised in the parties' briefs warrants discussion.

### DISPOSITION

The judgment is reversed; the trial court is directed to enter a judgment declaring that Hudson was not a resident of his parents' household at the time of the accident in question and there is no coverage under the California Casualty policy for his alleged liability for Frerichs's injuries. The parties shall bear their own costs of this appeal.

Scotland, P. J., and Raye, J., concurred.

A petition for a rehearing was denied October 29, 1999, and respondent's petition for review by the Supreme Court was denied December 1, 1999.

---

[2]"We think that a resident of the same household is one, other than a temporary or transient visitor, who lives together with others in the same house for a period of some duration, although he may not intend to remain there permanently." (*Hardware Mutual Casualty Co.* v. *Home Indemnity Co.* (1966) 241 Cal.App.2d 303, 311 [50 Cal.Rptr. 508].)