WILLIAMS, J.
 

 Ronald D. Nicholson, as the Personal Representative (the PR) for the Estate of Ada B. Nicholson (Mother), appeals the decision of the Administrative Law Judge (ALJ) affirming the South Carolina Department of Health and Human Services’ (the Department) denial of Max Nicholson’s (Son) request for an undue hardship waiver under the South Carolina Medicaid program (Medicaid). We affirm.
 

 FACTS
 

 In April 1996, Mother began receiving services from Community Long Term Care (CLTC), a program provided by Medicaid. CLTC provides services to Medicaid recipients who elect to receive assistance in their homes rather than seek admission to a nursing facility. Mother continued to receive these services until January 1999 when she moved into Easley Nursing Home (the Nursing Home). While in the Nursing Home, Mother’s care was paid for by Medicaid. In July 2004, Mother passed away. Mother’s estate consisted of a partial interest in her home.
 

 Following Mother’s death, the Department determined it had paid $206,616.26 for CLTC and/or nursing home care on Mother’s behalf, and subsequently, the Department filed a claim in that amount against Mother’s estate. The PR then requested a hardship waiver on behalf of Son, who was incarcerated at the time, claiming Son had lived with Mother for more than two years prior to her entering the Nursing Home, which would preclude the Department from asserting an interest in Mother’s home. Son had been incarcerated since October 2002.
 

 The Department denied the PR’s request. The Department stated the hardship waiver would not be granted for the following reasons: (1) Son’s income exceeded 185% of the federal poverty guidelines; (2) Son was not actually residing in Mother’s home at the time the waiver was requested; and (3) Son had not lived in Mother’s home in over two and a half years prior to Mother’s institutionalization. Pursuant to the
 
 *594
 
 provisions of the Appeals and Hearings regulations of the Department, the PR appealed the Department’s denial, and a hearing was scheduled.
 

 The Hearing Officer assigned to review the PR’s appeal subsequently concurred with the Department’s decision to deny the waiver. The Hearing Officer additionally found CLTC services were the functional equivalent of nursing home care. The PR then appealed the Hearing Officer’s decision to the Administrative Law Court. Although the ALJ did not rule on the issue of whether CLTC is the functional equivalent of institutionalization, the ALJ did find Son was not “actually residing” in Mother’s home when the waiver application was submitted. The ALJ, therefore, upheld the Hearing Officer’s denial of Son’s hardship waiver. This appeal follows.
 

 STANDARD OF REVIEW
 

 “Appeals from decisions by the [Department are heard ■ pursuant to the Administrative Procedures Act [ (APA)]....” S.C.Code Ann. § 44-6-190 (2002). The APA, therefore, determines the standard of judicial review for cases initially heard by the Department.
 
 Todd’s Ice Cream, Inc. v. S.C. Employment Sec. Comm’n,
 
 281 S.C. 254, 257, 315 S.E.2d 373, 375 (Ct.App.1984). “It is well settled that in reviewing a decision by an administrative agency, this Court will not substitute its judgment for that of the agency concerning the weight of the evidence as to questions of fact.”
 
 Kearse v. State Health and Human Servs. Fin. Comm’n,
 
 318 S.C. 198, 200, 456 S.E.2d 892, 893 (1995). “Pursuant to the APA, this [C]ourt may reverse or modify an agency decision which is either affected by error of law or clearly erroneous in view of the reliable, probative, and substantial evidence in the record.”
 
 S.C. .Dep’t of Labor, Licensing, & Regulation v. Girgis,
 
 332 S.C. 162, 166, 503 S.E.2d 490, 492 (Ct.App.1998). The substantial evidence standard is met if a reasonable mind might accept the evidence as adequate to support the agency’s conclusion.
 
 Kearse,
 
 318 S.C. at 200, 456 S.E.2d at 893.
 

 LAW/ANALYSIS
 

 The PR argues the ALJ erred in finding Son was not “actually residing” in Mother’s home when the hardship application was made. We disagree.
 

 
 *595
 
 The Department may seek recovery of medical assistance paid under Medicaid from the estate of an individual who, at the age of fifty-five or older, received medical assistance consisting of nursing facility services or home and community-based services. S.C.Code Ann. § 43-7-460(A)(2) (Supp.2007). The Department must waive recovery, however, upon proof of undue hardship asserted by an heir or devisee of the decedent. S.C.Code Ann. § 43-7-460(0 (Supp.2007).
 

 An undue hardship exists if the surviving child of the decedent lived in the home of the decedent for at least two years immediately prior to the decedent’s institutionalization. Section 43-7-460(C)(l)(d). The child claiming this hardship, however, must have been
 
 “actually residing
 
 in the [decedent’s] home at the time the hardship [was] claimed.” Section 43 — 7—460(C)(1) (emphasis added). Another situation allowing for an undue hardship waiver is when the claimant has been living in the decedent’s home two years prior to the decedent’s death, owns no real property, and earns below a certain income level. Section 43-7-460(C)(2)(a), (c), (d). As in the previous example, however, the claimant must have been
 
 “actiially residing
 
 in the [decedent’s] home at the time the hardship [was] claimed.” Section 43-7-460(C)(2)(b) (emphasis added). The statute fails to define the phrase “actually residing.” Consequently, we must turn to the rules of statutory construction to ascertain the phrase’s meaning.
 

 The cardinal rule of statutory construction is to determine and give effect to the intent of the legislature.
 
 Charleston County Sch. Dist. v. State Budget & Control Bd.,
 
 313 S.C. 1, 5, 437 S.E.2d 6, 8 (1993). The best evidence of legislative intent is the text of the statute.
 
 Jones v. State Farm Mut. Auto. Ins. Co.,
 
 364 S.C. 222, 231, 612 S.E.2d 719, 724 (Ct.App.2005). If “the terms of the statute are clear, the court must apply those terms according to their literal meaning.”
 
 City of Columbia v. Am. Civil Liberties Union of S.C., Inc.,
 
 323 S.C. 384, 387, 475 S.E.2d 747, 749 (1996). If there is any ambiguity in the statute, however, that ambiguity “should be resolved in favor of a just, equitable, and beneficial operation of the law.”
 
 Stephen v. Avins Constr. Co.,
 
 324 S.C. 334, 340, 478 S.E.2d 74, 77 (Ct.App.1996). Furthermore, “[t]he language [of the statute] must also be read in a sense which harmonizes with its subject matter and accords with its gener
 
 *596
 
 al purpose.”
 
 Cox v. BellSouth Telecomm.,
 
 356 S.C. 468, 472, 589 S.E.2d 766, 768 (Ct.App.2003). “Where a word is not defined in a statute, our appellate courts have looked to the usual dictionary meaning to supply its meaning.”
 
 Lee v. Thermal Eng’g Corp.,
 
 352 S.C. 81, 91-92, 572 S.E.2d 298, 303-04 (Ct.App.2002).
 

 “Reside” has been defined as (1) to dwell permanently or continuously; (2) to have a settled abode for a time; or (3) to have one’s residence or domicile.
 
 Webster’s Third New International Dictionary
 
 1931 (1986). However, in the legal field, the term “reside” has been defined as to “[l]ive, dwell, abide, sojourn, stay, remain, [or] lodge.” Black’s Law Dictionary 1176 (5th ed.1979). Additionally, the term “residence” has been defined as “[t]he place where one actually lives, as distinguished from a domicile____” Black’s Law Dictionary 1050 (7th ed.2000). “Domicile” has been defined as “[t]he place at which a person is physically present and that the person regards as home; a person’s true, fixed, principal, and permanent home, to which that person intends to return and remain even though currently residing elsewhere.”
 
 Id.
 
 at 396.
 

 In light of these definitions, “residence” is a somewhat general and fluid term. When read alone, the word “residence” is susceptible to varying interpretations.
 
 Phillips v. S.C. Tax Comm’n,
 
 195 S.C. 472, 476, 12 S.E.2d 13, 15 (1940). It may have a restricted or enlarged meaning, and therefore, the precise meaning of the term is dependent upon the explanatory context.
 
 Id.
 
 at 476-77, 12 S.E.2d at 15-16.
 

 The context in which “actually residing” is used in Section 43-7-460 indicates the phrase has a restricted meaning of physical presence, rather than a broader meaning of domicile. The statute allows for waivers of the State’s recovery only in situations when the ramifications would be extremely detrimental to the claimant.
 
 See
 
 Section 43-7-460(0 (stating the Department must waive recovery if an heir or devisee proves undue hardship will ensue). The requirement that the claimant must actually be living in the decedent’s home when the undue hardship waiver is claimed is one way the statute ensures the waivers are permitted in only those limited situations.
 

 
 *597
 
 This restricted meaning of physical presence is bolstered by the emphasis added by the adverb “actually.” This adverb stresses the importance that the claimant must currently be living in the decedent’s home when the hardship is claimed. Looking at the language of the statute, it is insufficient to show the decedent’s home is the claimant’s domicile without proof the home is also the claimant’s current residence. This interpretation is in line with previous case law which has recognized that “ ‘residence’ is a more elastic and flexible term than domicile or citizenship. A person may have only one domicile, but may have several residences.”
 
 Cook v. Fed. Ins. Co.,
 
 263 S.C. 575, 582, 211 S.E.2d 881, 884 (1975). We also note, while a person’s “legal residence” is often determined by his or her domicile, a person’s “actual residence” will be determined by his or her “present physical location.” 25 Am.Jur.2d Domicil § 9 (2008). This distinction between actual residence and legal residence has long been recognized.
 
 See Phillips,
 
 195 S.C. at 477, 12 S.E.2d at 16 (“But a distinction has long been made between
 
 actual residence and legal residence.”)
 
 (emphasis in original).
 

 Finding the phrase “actually residing” requires physical presence in the decedent’s home, Son must have been currently living in Mother’s home when the hardship waiver application was made. Son was incarcerated at the South Carolina Department of Corrections when the PR requested the undue hardship waiver, and thus, he was not physically present in Mother’s home when the hardship waiver application was made. Therefore, Son did not meet the requirements for an undue hardship waiver, and the waiver was properly denied.
 

 CONCLUSION
 

 For the foregoing reasons, the decision of the ALJ is
 

 AFFIRMED.
 
 [1]
 

 HUFF and KITTREDGE, JJ., concur.
 

 [1]
 

 . We decide this case without oral argument pursuant to Rule 215, SCACR.