659 S.E.2d 125

**Howard E. DUVALL, Jr., Appellant,**

v.

**SOUTH CAROLINA BUDGET AND CONTROL BOARD,
South Carolina Retirement System, Respondents.**

No. 26451.

Supreme Court of South Carolina.

Heard Jan. 22, 2008.

Decided March 10, 2008.

38

Danny C. Crowe and R. Hawthorne Barrett, both of Turner, Padget, Graham & Laney, of Columbia, for Appellant.

Kelly Hunter Rainsford, of South Carolina Retirement System, of Columbia, and W. Allen Nickles, III, of Gergel, Nickles & Solomon, of Columbia, for Respondents.

Justice WALLER.

Appellant, Howard E. Duvall, Jr., challenged the calculation of his retirement benefits by respondent, the South Carolina Retirement System ("SCRS"). The Administrative Law Court ("ALC") upheld the calculation made by the SCRS, and the circuit court affirmed the ALC's decision. Duvall now directly appeals to this Court. We affirm.

## FACTS

Duvall has been the executive director of the Municipal Association of South Carolina ("MASC") since 1992 and has been employed there since 1987. Although Duvall is not a state employee, he is an active member in the SCRS because the MASC is a participating employer with the SCRS.[1]

Before 2003, the MASC permitted its employees to accrue unlimited amounts of unused annual leave. In October 2002, the MASC's board of directors changed this policy and decided to cap unused leave at 45 days (360 hours). Of the MASC's 35–member staff, only four people had unused leave in excess of 45 days, and Duvall was one of those four. The MASC board decided that all employees who had accumulated leave in excess of 360 hours as of December 31, 2002, would be allowed to either use the leave, or be paid the excess annual leave "as an addition to salary" prior to leaving the employment of the MASC.

Duvall opted to be paid for his excess leave. In the first quarter of 2003, he received approximately $18,000 for unused excess annual leave; in the second quarter of 2003, he was paid approximately $39,000. The payouts for Duvall's excess leave of 734.8 hours came to a total of $57,997.76.[2]

---

1. *See* S.C.Code Ann. § 9–1–470 (Supp.2007).

2. Originally, the SCRS subtracted contributions to the retirement system from these payments. However, those contributions were subsequently refunded to Duvall.

Duvall decided to retire under the Teacher and Employee Retention Incentive (TERI) plan, with an effective retirement date of October 1, 2003.[3] At the time of his TERI retirement, Duvall's regular annual salary was approximately $147,000. Furthermore, because he still had 45 days of unused annual leave at retirement, he received a lump sum payment of $27,637.20 at retirement. When the SCRS calculated Duvall's average final compensation, this latter amount was included in the calculation; however, the payments he received earlier in 2003 for excess unused annual leave (amounting to over $57,000) were excluded from the calculation of his retirement benefits.

The estimates done by the SCRS projected that if all payments were considered, Duvall would have a monthly retirement benefit of $9,224.13; with the excess leave payments **excluded,** the monthly benefit would be $8,053.99. Thus, if the excess leave payments are considered this would amount to over $14,000 more in benefits per year.[4]

Duvall challenged the calculation, arguing that the $57,997.76 in unused annual leave was intended by the MASC to be part of his salary, and therefore, he was entitled to have it included for purposes of calculating his average final compensation. The SCRS issued a Final Agency Determination which found that the system was prohibited by statute from including any payments for unused annual leave above the 45–day limit. See S.C.Code Ann. § 9–1–10(4).

Duvall filed for review with the ALC. After a hearing, the ALC upheld the agency's decision. Duvall then appealed to the circuit court. In addition to arguing that the ALC should be reversed on the merits, Duvall also argued that because of a subsequent statutory amendment, the case should be remanded back to the ALC. The circuit court affirmed the ALC's ruling. Specifically, the circuit court found that leave payments which either exceed 45 days or are made at any

---

3. Duvall had 36 years of service credit within the SCRS. Pursuant to the TERI program, Duvall remains director of MASC until September 30, 2008. For these five years, the SCRS retains his monthly retirement benefits in an interest-free account.

4. This does not take into account cost of living increases.

time other than "at retirement" should not be included in the average final compensation calculation.

## ISSUE

Did the circuit court err in affirming the exclusion of excess unused leave payments from the calculation of Duvall's retirement benefits?

## DISCUSSION

Duvall argues the circuit court erred by finding that SCRS properly excluded the excess annual leave payments he received in the first two quarters of 2003 from its calculation of his retirement benefits. We disagree.

This Court has stated that the retirement statutes "should be liberally construed in favor of those to be benefitted and the objective sought to be accomplished." *King v. South Carolina Ret. Sys.*, 319 S.C. 373, 461 S.E.2d 822 (1995). Nevertheless, the SCRS is also "administered under an elaborate statutory and constitutional scheme designed to protect the independence, integrity and actuarial soundness of the funds." *Wehle v. South Carolina Ret. Sys.*, 363 S.C. 394, 399, 611 S.E.2d 240, 242 (2005).

"Average final compensation" is currently defined by statute as:

> [T]he average annual earnable compensation [5] of a member during the twelve consecutive quarters of his creditable service on which regular contributions as a member were made to the system producing the highest such average; a quarter means a period January through March, April through June, July through September, or October through December. **An amount up to and including forty-five**

---

5. "Earnable compensation" is defined as "the full rate of the compensation that would be payable to a member if the member worked the member's full normal working time; when compensation includes maintenance, fees, and other things of value the board shall fix the value of that part of the compensation not paid in money directly by the employer." § 9–1–10(8).

days' termination pay for unused annual leave at retirement may be added to the average final compensation. S.C.Code Ann. § 9-1-10(4) (Supp.2007) (emphasis added).

The primary rule of statutory construction is to ascertain and effectuate the intent of the Legislature. *E.g., Hodges v. Rainey*, 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000). When construing statutory language, the statute must be read as a whole, and sections which are part of the same general statutory law must be construed together and each one given effect. *TNS Mills, Inc. v. South Carolina Dep't of Revenue*, 331 S.C. 611, 620, 503 S.E.2d 471, 476 (1998). Moreover, "[a] statute should not be construed by concentrating on an isolated phrase." *South Carolina State Ports Auth. v. Jasper County*, 368 S.C. 388, 398, 629 S.E.2d 624, 629 (2006). The Court must presume the Legislature intended its statutes to accomplish something and did not intend a futile act. *TNS Mills, supra.*

Citing the liberal construction rule of *King, supra*, Duvall contends that because the average final compensation definition only speaks to "termination pay for unused annual leave at retirement," those payments made **prior to** retirement should be included as salary.[6] Specifically, Duvall maintains that the Legislature included the phrases "termination pay" and "at retirement" because it intended to refer only to unused leave payments made at the actual end of a system member's employment. According to Duvall, any other interpretation of the statute would ignore those words and therefore render the Legislature's action as futile.

---

6. To support his argument that the payments for excess leave should be considered part of his salary, Duvall relies on *Bales v. Aughtry*, 302 S.C. 262, 395 S.E.2d 177 (1990). In *Bales*, the Court stated that "[l]eave benefits are part of compensation earned for services rendered and the right to receive that compensation vests once the services are rendered." *Id.* at 264, 395 S.E.2d at 179. The issue in *Bales*, however, was not how leave payments related to retirement calculations; instead, it was whether elected county officials were entitled to payment of accumulated sick and annual leave. The Court held that "[p]ayment for accrued leave benefits does not constitute extra compensation after services rendered." *Id.* Here, there is no dispute that Duvall was indeed paid for his accrued leave benefits. The issue is whether those payments should be figured into the average final compensation computation. Thus, we find *Bales* inapposite to the instant case.

In addition, Duvall asserts that because he is not a state employee, he is not restricted to 45 days of annual leave upon retirement; state employees, on the other hand, are statutorily limited to a 45-day cap. *See* S.C.Code Ann. § 8-11-620 ("Upon termination from state employment, an employee may take both annual leave and a lump-sum payment for unused leave, but this combination may not exceed forty-five days in a calendar year").

█  We find Duvall's arguments unpersuasive. The statutory language defining average final compensation clearly indicates that a maximum of 45 days' pay for unused annual leave should be used to calculate the average final compensation. Thus, even if additional payments for annual leave are made at a time other than "at retirement," those payments should not be included. In our opinion, the Legislature's inclusion of the terms "termination pay" and "at retirement" was not futile; instead, when these terms are read in context with the entire definition of average final compensation, the language clearly establishes the intent to cap how much unused annual leave may be figured into the retirement calculation. *See Hodges v. Rainey, supra* (the primary rule of statutory construction is to ascertain and effectuate the intent of the Legislature); *see also South Carolina State Ports Auth. v. Jasper County, supra* (a statute should not be construed by focusing on an isolated phrase).

Furthermore, this Court's discussion of average final compensation in *Kennedy v. South Carolina Ret. Sys.,* 345 S.C. 339, 549 S.E.2d 243 (2001), supports the decision made by the SCRS.[7] At issue in *Kennedy* was whether the 45 days of unused annual leave pay should be added into the equation before or after the total average had been calculated. The *Kennedy* Court looked to the legislative history, as well as the rules of statutory construction, and concluded the intent was that annual leave pay should be added prior to the average being computed.

The *Kennedy* Court noted that when the Legislature amended this definition in 1978, it "addressed unused annual leave for the first time." *Id.* at 344, 549 S.E.2d at 245. The

---

7. When *Kennedy* was heard, the statutory section defining average final compensation was § 9-1-10(17), but it is now located at § 9-1-10(4).

1978 amendment added the following emphasized language, and the definition then stated as follows:

> "Average final compensation" with respect to those members retiring on or after July 1, 1970, shall mean the average annual earnable compensation of a member during the three consecutive fiscal years of his creditable service producing the highest such average; **an amount up to and including forty-five days termination pay for unused annual leave may be added to the pay period immediately prior to retirement and included in the average as applicable.**

Prior to 1978, however, there was no language specifically addressing unused annual leave. As a matter of policy, the SCRS had credited retirees with **all** of their accrued unused leave and used that credit when calculating the average final compensation. Moreover, there was no limit on the amount of annual leave that an employee could accumulate. *See id.* at 343, 549 S.E.2d at 245.

According to the *Kennedy* Court, the 1978 amendment therefore had two primary effects regarding annual leave:

> First, the amendment placed a forty-five day cap on the amount of unused annual leave for which an employee could receive credit. Second, the unused annual leave could only be calculated in the average final compensation equation if the pay period immediately prior to the employee's retirement was one of the three highest in the employee's career. As a consequence of this second restriction, employees would regularly have to retire on the last day of their last fiscal year to ensure that any unused annual leave would be included in the calculation. Servicing a large volume of retirement claims at one time created an administrative problem for the Retirement System.

*Id.*

As a result of this administrative glitch, the Legislature amended the definition again in 1986 by using language regarding "twelve consecutive quarters" as opposed to "three consecutive fiscal years." Thus, the 1986 amendment allowed members of the SCRS "to retire throughout the year, rather than require essentially all retirements to occur on June 30,

the last day of the fiscal year." *Wehle,* 363 S.C. at 400, 611 S.E.2d at 243.

The *Kennedy* Court's conclusion was that average final compensation was properly calculated by totaling the 12 highest consecutive quarters, adding the termination payment for up to 45 days of unused annual leave, and **then** taking the average. The Court reasoned that if the statute was interpreted as allowing the annual leave payment to be added in **after** an average was taken, "this interpretation would increase the dollar value for unused annual leave three fold, and would allow members to retire with benefits calculated on an 'average' salary which is greater than any salary they earned during employment." *Kennedy,* 345 S.C. at 348, 549 S.E.2d at 248 (footnote omitted).

In the instant case, Duvall's position is that he is entitled to calculate his average final compensation by adding: (1) his pre-retirement payments for **over 90 days** of excess unused leave ($57,997.76); (2) his regular salary for the 12 quarters prior to retirement; and (3) his final payment at retirement for 45 days of unused annual leave ($27,637.20); and then dividing that sum by three. Clearly, this would inflate the average of his final three years of salary to an amount significantly "greater than any salary" he earned during one regular year of employment. Pursuant to *Kennedy,* this would be an absurd result unintended by the Legislature. *See id.* at 351, 549 S.E.2d at 249 (statutes should not be construed as to lead to absurd results).

Put another way, Duvall is asking that he be credited with three times the amount of unused annual leave that state employees are permitted. We simply do not believe the Legislature intended such a result, especially because the language of section 9–1–10(4) defines the average final compensation to be for those "members retiring." We therefore find that the 45–day cap for unused annual leave is intended for all members of the SCRS, not simply those classified as state employees. *Cf.* S.C.Code Ann. § 9–1–290 (1986) (the Budget and Control Board shall, "from time to time, in its

discretion, adopt rules and regulations to prevent injustices and inequalities which might otherwise arise in the administration of the System.").

Finally, Duvall contends that an amendment to section 9-1-1020, which expressly supports the practice used by the SCRS in this case, was a material change to the statute, thereby indicating that his interpretation of the statute (in its prior form) is correct. We disagree.

When the Legislature adopts an amendment to a statute, this Court recognizes a presumption that the Legislature intended to change the existing law. *Key Corp. Capital, Inc. v. County of Beaufort*, 373 S.C. 55, 60, 644 S.E.2d 675, 678 (2007). Nonetheless, a subsequent statutory amendment may also be interpreted as clarifying original legislative intent. *Stuckey v. State Budget and Control Bd.*, 339 S.C. 397, 401, 529 S.E.2d 706, 708 (2000) (citing *Cotty v. Yartzeff*, 309 S.C. 259, 422 S.E.2d 100 (1992)).

At the time the SCRS made its decision in this case, section 9-1-1020 read as follows, in pertinent part:

> Payments for unused sick leave, single special payments at retirement, bonus and incentive-type payments, or any other payments not considered a part of the regular salary base are not compensation for which contributions are deductible. Contributions are deductible on pay for unused annual leave.

In 2005, the Legislature amended this section, with an effective date of July 1, 2004. *See* 2005 Act No. 14, § 3 (the Act). The statute now provides as follows:

> Payments for unused sick leave, single special payments at retirement, bonus and incentive-type payments, or any other payments not considered a part of the regular salary base are not compensation for which contributions are deductible. Contributions are deductible on **up to and including forty-five days termination** pay for unused annual leave. **If a member has received termination pay for unused annual leave on more than one occasion, contri-**

butions are deductible on up to and including forty-five days termination pay for unused annual leave for each termination payment for unused annual leave received by the member. However, only an amount up to and including forty-five days pay for unused annual leave from the members last termination payment shall be included in a members average final compensation calculation.

(Additions to statute emphasized). The title of the Act specifically stated that the amendment of section 9–1–1020 "relat[ed] to member contributions for purposes of the South Carolina Retirement System, so as to clarify the contribution requirements on unused annual leave and the use of such payments in calculating average final compensation." (Emphasis added.)

Given that the title of the Act itself indicates the amendment was a clarification of, rather than a change to, the law, we find a remand to the ALC is unnecessary. *See, e.g., Kennedy,* 345 S.C. at 349, 549 S.E.2d at 248 (where the Court looked at the title of an Act to glean legislative intent); *Demas v. Convention Motor Inns,* 268 S.C. 186, 190, 232 S.E.2d 724, 726 (1977) (noting that it is proper to discern legislative intent from the title of an Act).

## CONCLUSION

Based on the above discussion, we hold that the circuit court and the ALC correctly decided the SCRS appropriately excluded payments made to Duvall for excess unused annual leave from the calculation of his retirement benefits. Thus, the circuit court's decision is

**AFFIRMED.**

TOAL, C.J., MOORE, PLEICONES and BEATTY, JJ., concur.