MCDONALD, J.:
**211 York Preparatory Academy (YPA) and Hock RH, LLC (Hock) appeal an order of the administrative law court (ALC) affirming the South Carolina Department of Revenue's (DOR's) denial of Appellants' tax protest and request for a refund of 2013 property taxes paid on property leased by YPA, a public charter school. Appellants argue they are entitled to the refund because, in 2014, the General Assembly amended section 59-40-140(K) of the South Carolina Code to clarify that real property leased by public charter schools is exempt from ad valorem taxation. We reverse.
Facts and Procedural History
In 2009, the South Carolina Public Charter School District issued YPA a charter to establish *542 and operate a public charter school under the South Carolina Charter Schools Act.[1] YPA subsequently organized as a nonprofit corporation and is exempt from Federal income tax.[2]
On April 7, 2011, YPA entered a twenty-five year lease agreement with Hock, with the lease to begin on November 1, 2012. In late 2012, YPA moved to Hock's forty-five acre campus on Golden Gate Court in Rock Hill (the Campus). Since that time, YPA has used the Campus exclusively to educate students from kindergarten through twelfth grade. Under the terms of the lease agreement, YPA is responsible for all maintenance and upkeep of the Campus and its facilities and any property taxes. On September 27, 2013, Appellants executed a lease memorandum granting YPA the option to purchase the Campus. Appellants recorded the lease memorandum in York County on October 8, 2013.
On November 4, 2013, YPA sought a property tax exemption for the Campus from DOR pursuant to S.C. Code Ann. § 12-37-220(A)(2) (Supp. 2012). DOR denied YPA's application by determination letter dated January 31, 2014, concluding **212 that " § 12-37-220(A)(2) makes no provision for leased property. Because [YPA] does not own [the Campus], an exemption through § 12-37-220(A)(2) does not exist."[3] Using funds tendered by YPA, Hock paid the 2013 property taxes of $271,801.51 on February 20, 2014.
Hock conveyed the Campus to YPA in February 2014. On March 26, 2014, DOR notified YPA that it had granted a § 12-37-220(A)(2) exemption for the Campus for the 2014 tax year.
On May 29, 2014, the South Carolina General Assembly passed Act 208 to amend legislation "exempting all earnings or property of charter schools from state or local taxation, except for the sales tax, so as to clarify that property of charter schools exempt from such taxation includes owned or leased property." 2014 S.C. Act No. 208. The amendment was subsequently codified with an effective date of June 2, 2014. S.C. Code Ann. § 59-40-140(K) (Supp. 2014).
Citing the 2014 amendment, on October 6, 2014, Appellants filed for a refund of the 2013 property taxes. DOR denied the refund request on February 3, 2015, determining Appellants were not entitled to an exemption under § 59-40-140(K) for the 2013 tax year because the 2014 amendment did not apply retroactively.
On March 3, 2015, Appellants appealed DOR's determination to the ALC, where the parties filed cross-motions for summary judgment. The ALC granted DOR's motion for summary judgment on September 2, 2015, finding Appellants were not entitled to a refund because § 59-40-140(K)'s exemption of leased property did not apply retroactively.
Standard of Review
"[A] question of statutory interpretation is one of law for the court to decide. A reviewing court may reverse the decision of the ALC where it is in violation of a statutory provision or it is affected by an error of law." Alltel Commc'ns, Inc. v. S.C. Dep't of Revenue , 399 S.C. 313, 316, 731 S.E.2d 869, 870-71 (2012) ; see § 1-23-610(B)(a), (d) (Supp. 2017).
**213 Law and Analysis
Appellants argue the ALC erred in ruling they were not entitled to a refund of the 2013 property taxes because the 2014 amendment to S.C. Code Ann. § 59-40-140(K) merely clarified an already existing law exempting public charter school properties from all state and local property taxes. We agree.
"The general rule is that a strict construction is required of constitutional and statutory provisions that grant exemptions ... from taxation." Charleston Cty. Aviation Auth . v. Wasson , 277 S.C. 480, 485, 289 S.E.2d 416, 419 (1982). "Constitutional and statutory language creating exemptions from taxation will not be strained or liberally construed *543 in favor of the taxpayer claiming the exemption. Id. (quoting York Cty. Fair Ass'n v. S.C. Tax Comm'n , 249 S.C. 337, 341, 154 S.E.2d 361, 363 (1967) ). A distinction exists, however, as to the tax exemptions of individuals as opposed to those of the instrumentalities of government. Our supreme court has explained:
[E]xemptions of the property of municipal corporations are liberally construed, for exemptions of such property [are] the rule and taxation the exception. With us[,] municipal corporations are merely agencies of the state for governmental purposes; and it has never been the policy of this state to tax its own agencies or instrumentalities of government.
Charleston Cty. Aviation Auth. , 277 S.C. at 85-86, 289 S.E.2d at 419-20 (quoting Town of Myrtle Beach v. Holliday , 203 S.C. 25, 30, 26 S.E.2d 12, 14 (1943) ).
In 1996, the General Assembly enacted legislation "which provides for the manner in which a charter school shall be formed, funded, regulated, and governed." 1996 S.C. Act No. 447; S.C. Code Ann. §§ 59-40-10 to -240 (Supp. 1996).
In authorizing charter schools, it is the intent of the General Assembly to create a legitimate avenue for parents, teachers, and community members to take responsible risks and create new, innovative, and more flexible ways of educating all children within the public school system. The General Assembly seeks to create an atmosphere in South Carolina's public school systems where research and development in **214 producing different learning opportunities are actively pursued and where classroom teachers are given the flexibility to innovate and the responsibility to be accountable. As such, the provisions of this chapter should be interpreted liberally to support the findings and goals of this chapter and to advance a renewed commitment by the State of South Carolina to the mission, goals, and diversity of public education.
S.C. Code Ann. § 59-40-30(A) (Supp. 1996) (emphasis added).
At the time of its enactment, S.C. Code Ann. § 59-40-140(J) (Supp. 1996) provided, "Charter schools are exempt from all state and local taxation, except the sales tax, on their earnings and property. Instruments of conveyance to or from a charter school are exempt from all types of taxation of local or state taxes and transfer fees." In 2006, the General Assembly amended the statute, moving the language of subsection (J) to subsection (K). 2006 S.C. Act No. 274; S.C. Code Ann. § 59-40-140(K) (Supp. 2006). The 2006 amendment recodified subsection (J) verbatim. Id. On May 29, 2014, the General Assembly amended subsection (K), with an effective date of June 2, 2014. 2014 S.C. Act 208; S.C. Code Ann. § 59-40-140(K) (Supp. 2014). The 2014 amendment omits the word "all" and replaces it with the phrase "whether owned or leased." Id. The effect is as follows: "Charter school are exempt from allstate and local taxation, except the sales tax, on their earnings and property whether owned or leased . Instruments of conveyance to or from a charter school are exempt from all types of taxation of local or state taxes and transfer fees." Id. (omission from and addition to statute emphasized).
"The cardinal rule of statutory construction is a court must ascertain and give effect to the intent of the legislature." State v. Elwell , 403 S.C. 606, 612, 743 S.E.2d 802, 806 (2013) (quoting State v. Scott , 351 S.C. 584, 588, 571 S.E.2d 700, 702 (2002) ). "What a legislature says in the text of a statute is considered the best evidence of the legislative intent or will." Id. (quoting Scott , 351 S.C. at 588, 571 S.E.2d at 702 ). "It is [also] 'proper to consider the title or caption of an act in aid of construction to show the intent of the legislature.' " Rhame v. Charleston Cty. Sch. Dist. , 412 S.C. 273, 276-77, 772 S.E.2d 159, 161 (2015) (quoting **215 Lindsay v. S. Farm Bureau Cas. Ins. Co. , 258 S.C. 272, 277, 188 S.E.2d 374, 376 (1972) ). "Where the statute's language is plain, unambiguous, and conveys a clear, definite meaning, the rules of statutory interpretation are not needed and the court has no right to impose another meaning. If the statute is ambiguous, however, courts must construe the terms of the statute." Town of Mt. Pleasant v. Roberts , 393 S.C. 332, 342, 713 S.E.2d 278, 283 (2011). "In construing statutory language, the statute *544 must be read as a whole, and sections which are part of the same general statutory law must be construed together and each one given effect." TNS Mills, Inc. v. S.C. Dep't of Revenue , 331 S.C. 611, 620, 503 S.E.2d 471, 476 (1998).
"In the construction of statutes[,] there is a presumption that statutory enactments are to be considered prospective rather than retrospective ... unless the intention to make them retrospective is clearly apparent from the terms thereof." Neel v. Shealy , 261 S.C. 266, 273, 199 S.E.2d 542, 545 (1973). "Statutes are not to be applied retroactively unless that result is so clearly compelled as to leave no room for doubt." S.C. Nat'l Bank v. S.C. Tax Comm'n , 297 S.C. 279, 281, 376 S.E.2d 512, 513 (1989). "When the Legislature adopts an amendment to a statute, [our appellate courts recognize] a presumption that the Legislature intended to change the existing law." Duvall v. S.C. Budget & Control Bd. , 377 S.C. 36, 46, 659 S.E.2d 125, 130 (2008). However, "a subsequent statutory amendment may also be interpreted as clarifying original legislative intent." Id. at 46, 659 S.E.2d at 130. By Act 208, the General Assembly amended subsection (K) to expressly provide that "Charter schools are exempt from state and local taxation, except the sales tax, on their earnings and property whether owned or leased." 2014 S.C. Act 208; S.C. Code Ann. § 59-40-140(K) (Supp. 2014). Act 208 is titled, "An act to amend section 59-40-140... so as to clarify that property of charter schools exempt from such taxation includes owned or leased property ." 2014 S.C. Act. 208 (emphasis added); see Rhame , 412 S.C. at 276-77, 772 S.E.2d at 161 (explaining it is proper to consider the title of an act to determine legislative intent). Thus, by its own words, the General Assembly's stated purpose for the 2014 amendment was to clarify rather than broaden the exemption already afforded.
**216 Prior decisions of our supreme court further support the conclusion that the 2014 amendment merely clarified the Legislature's previous intent. In Duvall v. South Carolina Budget & Control Board , a retiree challenged the calculation of his benefits, arguing an amendment addressing unused annual leave "was a material change to the statute, thereby indicating that his interpretation of the statute (in its prior form) is correct." 377 S.C. at 46, 659 S.E.2d at 130. The supreme court disagreed. Id. at 47, 659 S.E.2d at 130. In determining the amendment was not a material change but was instead intended to clarify the General Assembly's original intent, the court looked to the title of Act 14, which "specifically stated that the amendment of section 9-1-1020 'relat[ed] to member contributions for purposes of the South Carolina Retirement System, so as to clarify the contribution requirements on unused annual leave and the use of such payments in calculating average final compensation.' " Id. (alteration in original) (quoting 2005 S.C. Act No. 14, § 3). Finding "that the title of the Act itself indicates the amendment was a clarification of, rather than a change to, the law," the court declined the appellant's challenge as to the exclusion of the annual leave benefits. Id.
In Edwards v. State Law Enforcement Division , our supreme court rejected the argument that a statutory amendment clarified rather than changed a law requiring pardoned sex offenders to comply with the statute's registration requirements. 395 S.C. 571, 576, 720 S.E.2d 462, 464 (2011). There, a sex offender who had received a pardon on his two "Peeping Tom" convictions requested an order declaring he was no longer required to register as a sex offender. Id. at 574, 720 S.E.2d at 463. The Attorney General asserted that the pardon did not relieve the appellant from the registration requirement because the amendments were remedial and procedural in nature, and thus, applied retroactively. Id. The circuit court determined the pardon relieved the appellant from the registration requirement. Id. On appeal, our supreme court noted the Legislature amended the challenged code section after enacting our state's pardon statute, which provides, "[A]n individual is fully pardoned from all the legal consequences of his crime and of his conviction, direct and collateral, including the punishment, whether of imprisonment, pecuniary penalty, **217 or whatever else the law has provided." Id. at 577, 720 S.E.2d at 465 (quoting S.C. Code Ann. § 24-21-940 (2007) ). The court stated,
*545 It is clear that the General Assembly's amendments to the sex offender registry statute changed rather than clarified the law. The statute was silent regarding pardons at its creation in 1994. In 2004, the General Assembly mandated ... that a pardon relieved an individual of all criminal and civil penalties accompanying her crime. In 2005 and 2008, the General Assembly ensured that the broad application of the pardon statute would not relieve sex offenders of their registration obligation.
Id. In rejecting the Attorney General's position that the statutory amendments merely clarified an existing law addressing pardoned sex offenders, the court explained, "The purpose of the amendment evinces the legislature's intent to except the sex offender registry requirements from the broad relief afforded by the pardon statute, and no evidence can be shown of a previous legislative intent that would require clarification." Id. at 578-79, 720 S.E.2d at 466.
Ample evidence in this case supports Appellants' position that the 2014 amendment clarified, rather than changed, the law. YPA is a public charter school exempt from ad valorem taxation by the plain language of both § 59-40-140(K) and our state constitution. See S.C. Const. art. X, § 3 (a), (b) ("There shall be exempt from ad valorem taxation: (a) all property of the State, counties, municipalities, school districts and other political subdivisions, if the property is used exclusively for public purposes; (b) all property of all schools, colleges and other institutions of learning and all charitable institutions in the nature of hospitals and institutions caring for the infirmed, the handicapped, the aged, children and indigent persons, except where the profits of such institutions are applied to private use."). Such exemption is further codified in § 12-37-220(A)(1) and (2). See S.C. Code Ann. § 12-37-220(A)(1), (2) (Supp. 2013) ("Pursuant to the provisions of Section 3, Article X of the State Constitution and subject to the provisions of Section 12-4-720, there is exempt from ad valorem taxation: (1) all property of the State, counties, municipalities, school districts ..., if the property is used exclusively for public purposes ...; (2) all property of all schools, colleges, and other **218 institutions of learning ..., except where the profits of such institutions are applied to private use."). Although the Campus was privately owned during the 2013 tax year, it is undisputed that YPA exclusively used the Campus as a public charter school and was responsible by contract for payment of the 2013 property taxes. See Charleston Cty. Aviation Auth. , 277 S.C. at 487, 289 S.E.2d at 420 ("When the use of property is for a public purpose, an incidental private use or benefit will not negate or alter the public purpose use of the property.").
Relying on TNS Mills v. South Carolina Department of Revenue , 331 S.C. 611, 503 S.E.2d 471, DOR submits that applying S.C. Code Ann. § 59-40-140(K) (Supp. 2014) retroactively will "have harmful effects" because counties may suffer "devastating" consequences if forced to refund property tax payments erroneously collected from charter schools that leased their campuses between 2006 and 2014. We reject this contention. First, the record contains no evidence that any other charter school has applied for such a refund, and S.C. Code Ann. § 12-54-85(F)(1) (2014) sets forth appropriate deadlines to protect counties against such uncertainties.[4]
Further, we find TNS Mills inapplicable to the facts at hand. TNS Mills was entitled to certain property tax exemptions for pollution control equipment for tax years 1986 through 1991, but on its returns, TNS Mills left blank the sections where taxpayers were to report the equipment necessary to trigger the exemptions. Id. at 616, 503 S.E.2d at 474. In 1992, TNS Mills filed amended property tax *546 returns claiming exemptions for pollution control equipment for tax years 1986 through 1991; DOR granted the exemptions. Id. Although Spartanburg County issued a refund in excess of $400,000, Cherokee County and one of its school districts **219 appealed. Id. DOR then refused the exemptions, and the circuit court reversed DOR's refusal. Id.
Our supreme court reinstated DOR's final determination that the pollution control exemptions could not be granted retroactively. Id. at 629, 503 S.E.2d at 481. In relevant part, the court found TNS Mills did not timely apply for the exemptions by merely signing its tax returns, and DOR lacked the authority to grant the retroactive exemptions under the applicable statute. Id. at 617-24, 503 S.E.2d at 474-78. We find TNS Mills distinguishable from this case based on an analysis of this timeline alone. In accordance with the requirements of S.C. Code Ann. § 12-54-85(F) (Supp. 2014), YPA sought the property tax refund on October 6, 2014-less than six months after Act 208 was passed and approximately four months after the amended statute's effective date.[5]
It is not insignificant to our decision that even before the 2014 clarifying amendment, the property on which YPA operated the charter school was exempt from ad valorem taxation; the word "all" in § 59-40-140(K) (Supp. 2006), the plain language of § 12-37-220(A)(1) and (2) (Supp. 2013), and the South Carolina Constitution entitled YPA to the exemption. This reading of § 59-40-140(K) (Supp. 2006) is strengthened by our General Assembly's statement of intent that the provisions of the South Carolina Charter Schools Act "should be interpreted liberally to support the findings and goals" of the Act. S.C. Code Ann. § 59-40-30(A) (Supp. 1996). DOR argues the prior version of § 59-40-140(K) was ambiguous because it did not specify what type of property was exempt, other than to state that such property was exempt from "all state and local taxation" on "earnings and property." See S.C. Code Ann. § 59-40-140(K) (Supp. 2006); but see Charleston Cty. Aviation Auth. , 277 S.C. at 85-86, 289 S.E.2d at 419-20 ("[E]xemptions of the property of [instrumentalities of government] are liberally construed, for exemptions of such property [are] the rule and taxation the exception." quoting Town of Myrtle Beach , 203 S.C. at 30, 26 S.E.2d at 14 ). Yet, § 59-40-140(K) (Supp. 2006) certainly did not specify that only property **220 owned by charter schools was so exempt. Thus, DOR and the ALC erred in declining to apply the plain language required by the South Carolina Charter Schools Act to YPA's refund request.
Conclusion
For the foregoing reasons, the decision of the ALC is REVERSED.
GEATHERS and HILL, JJ., concur.

S.C. Code Ann. §§ 59-40-10 to -240 (2004 & Supp. 2017).

See 26 U.S.C.A. § 501(3)(c) (Supp. 2016).

Appellants did not appeal this determination to the ALC.

See S.C. Code Ann. § 12-54-85(F)(1) (2014) ("Except as provided in subsection (D), claims for credit or refund must be filed within three years from the time the return was filed, or two years from the date the tax was paid, whichever is later. If no return was filed, a claim for credit or refund must be filed within two years from the date the tax was paid. A credit or refund may not be made after the expiration of the period of limitation prescribed in this item for the filing of a claim for credit or refund, unless the claim for credit or refund is filed by the taxpayer or determined to be due by the department within that period.").

And, as noted above, YPA sought a § 12-37-220(A)(2) property tax exemption on November 4, 2013, prior to both the statutory amendment at issue and the timely filing of the refund request.