**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
In The Court of Appeals

Glenn C. Odom, Appellant,

v.

South Carolina Public Employee Benefit Authority, South Carolina Retirement Systems, Respondent.

Appellate Case No. 2023-000521

---

Appeal From The Administrative Law Court
Deborah Brooks Durden, Administrative Law Judge

---

Unpublished Opinion No. 2025-UP-127
Submitted February 3, 2025 – Filed April 16, 2025

---

**AFFIRMED**

---

Reginald Wayne Belcher and Hannah Davis Stetson, both of Turner Padget Graham & Laney, PA, of Columbia, for Appellant Glenn C. Odom.

Justin Richard Werner, of Columbia, for Respondent South Carolina Public Employee Benefit Authority, South Carolina Retirement Systems.

---

**PER CURIAM:** This case is about retirement benefits. The Administrative Law Court (ALC) found that several large payments made to Glenn Odom at the end of

his career were not "earnable compensation" for retirement purposes. The court reasoned that although the payments were made at regular intervals in the last years before Odom's retirement, the payments were not wages or salary but instead were payments owed to Odom's business; a business that, oddly, had an independent contract to perform the same job Odom held as an employee. We affirm because Odom has not carried his burden of proving the ALC's well-grounded decision is against the weight of the evidence.

An ALC decision will be upheld "unless it is unsupported by substantial evidence or controlled by some error of law." *Original Blue Ribbon Taxi Corp. v. S.C. Dep't of Motor Vehicles*, 380 S.C. 600, 604, 670 S.E.2d 674, 676 (Ct. App. 2008). "Substantial evidence is not a mere scintilla of evidence . . . but is evidence which, when considering the record as a whole, would allow reasonable minds to reach the conclusion that the agency reached in order to justify its action." *Bursey v. S.C. Dep't of Health & Env't Control*, 360 S.C. 135, 144, 600 S.E.2d 80, 85 (Ct. App. 2004), *aff'd*, 369 S.C. 176, 631 S.E.2d 899 (2006). "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Risher v. S.C. Dep't of Health & Env't Control*, 393 S.C. 198, 210, 712 S.E.2d 428, 434 (2011) (alteration in original) (quoting *Palmetto Alliance, Inc. v. Pub. Serv. Comm'n*, 282 S.C. 430, 432, 319 S.E.2d 695, 696 (1984)). Thus, "the burden is on [the] appellant[] to prove convincingly that the agency's decision is unsupported by the evidence." *Bursey*, 360 S.C. at 142, 600 S.E.2d at 84.

Before dealing with the main issue, we address Odom's argument that the ALC's decision has stripped him of all retirement benefits. As far as we can tell, PEBA has never challenged Odom's entitlement to some retirement benefits or its own computation of those benefits. In fact, PEBA's appellate brief asks us to affirm the ALC's "decision that *certain compensation* reported for [Odom] is not earnable compensation." (emphasis added). To the extent the ALC's order could be read as stripping Odom of all retirement benefits, we reject that reading. Odom's entitlement to the benefits designated in PEBA's final agency decision was not an issue below and is not an issue here.

We now turn to the arguments at the heart of this appeal. Much of this dispute arises out of unusual circumstances: before he retired, Odom was employed as the general manager of a rural water and sewer authority (Alligator), which also had an independent contract with Odom's separate and privately-owned business to provide the same services. The ALC openly struggled with understanding this situation, as

do we. It is hard to discern where the line was between Odom's role as employee and his business's role as independent contractor.

For example, it is undisputed that Odom never had a written or oral employment agreement with Alligator. At the hearing, Odom and his accountant testified that there were no documents related to Odom's salary, and they could not support how the amount of his salary was determined in any given year because there were no board minutes about Odom's compensation. Odom's claim that his increased compensation was based on performance seems inconsistent with the management agreement that his privately-owned business had with Alligator. Under the management agreement, performance incentives would be paid to Odom's business, not to him personally.

To this same point about the difficulty of ascertaining the line between Odom as employee and Odom's separate business, the record shows an inverse relationship between the amounts of money Alligator paid to Odom's business under the management agreement and the increased amounts Alligator paid to Odom right before his retirement, supposedly as salary. This pattern was mirrored in Odom's tax records. The undisputed testimony before the ALC established that managing Alligator was the primary and most profitable activity of Odom's business; yet, as Alligator became more profitable in the years before Odom's retirement, the money paid to Odom's business and the income Odom reported from his business decreased while the income Odom reported from Alligator as wages increased by staggering amounts. There was also evidence that certain payments Odom pointed to in support of his claim were not made and did not actually exist. These aspects of the record provide ample support for the ALC's decision that the payments in question were not regular wages and salary, but were most likely a reclassification of amounts owed to Odom's business under the management agreement.

Precedent explains that the retirement system is designed to provide benefits based on an employee's regular, sustained earnings rather than temporary, irregular, or inflated payments made late in someone's career. *See Wehle v. S.C. Ret. Sys.*, 363 S.C. 394, 399, 611 S.E.2d 240, 242 (2005) ("The [Retirement] System is administered under an elaborate statutory and constitutional scheme designed to protect the independence, integrity[,] and actuarial soundness of the funds."); *see also Kennedy v. S.C. Ret. Sys.*, 345 S.C. 339, 351, 549 S.E.2d 243, 249 (2001) (allowing a member to artificially inflate retirement benefits would lead "to the absurd result of rendering the State Retirement System actuarially unsound"); *Duvall v. S.C. Budget and Control Bd.*, 377 S.C. 36, 45, 659 S.E.2d 125, 129 (2008) (rejecting a member's attempt to "inflate the average of his final three years of salary

to an amount significantly 'greater than any salary' he earned during one year of employment[, because] . . . this would be an absurd result unintended by the legislature"). For this reason, "payments for unused sick leave, single special payments at retirement, bonus and incentive-type payments, or any other payments not considered a part of the regular salary base are not compensation for which contributions are deductible." S.C. Code Ann. § 9-1-1020 (2012).

If we accepted Odom's argument that the increased payments beginning in 2016 were earnable compensation, we would effectively allow his benefits to be calculated with an artificially increased salary and in a way that would surely be actuarially unsound and at odds with precedent. *See Kennedy*, 345 S.C. at 351, 549 S.E.2d at 249 *and Duvall*, 377 S.C. at 45, 659 S.E.2d at 129 (both described above). Indeed, if Odom prevailed, his *monthly* retirement benefit would be roughly the same as his *annual* salary throughout the majority of his employment.

In addition to the reasoning we have outlined above, the ALC's excellent order discussed the common law test for employment. Odom alleges the reasoning the ALC applied to that test is not correct. Though we do not see this analysis as necessary to resolving the case, we agree with the ALC. We do not question, and do not read the ALC's order as questioning, that Odom had an employment relationship with Alligator. Still, the argument that Alligator had the right to fire or control him is difficult to understand. *See Shatto v. McLeod Reg'l Med. Ctr.*, 406 S.C. 470, 477, 753 S.E.2d 416, 420 (2013) ("[T]he critical inquiry is 'whether there exists the *right and authority* to control and direct the particular work or undertaking.'" (quoting *Young v. Warr*, 252 S.C. 179, 189, 165 S.E.2d 797, 802 (1969))); *see also id.*, at 481, 753 S.E.2d at 422 ("The power to fire, it is often said, is the power to control. (quoting 3 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 61.08[1] (2013))). Though we are aware of nothing that would limit Alligator's right to terminate Odom as an employee, Odom's business had an independent contract to serve as Alligator's general manager.

Another prong of the employment test is "the right to direct the person by whom the services are to be performed, the time, place, degree, [or] amount of said services." *Id.* at 477, 753 S.E.2d at 420. The same contract undermines the argument that Alligator had this authority over Odom. In fact, the opposite was true: the management agreement definitively shows that Alligator delegated all managerial duties to Odom's business. Nothing in the management agreement establishes Alligator could direct how Odom, as the owner of his business, managed Alligator. To the contrary, Alligator filed paperwork reporting that it "delegate[d] control over management duties customarily performed by or under the direct supervision of

officers, [or] directors . . . to a management company."  In short, the record confirms the ALC's finding that Alligator did not have the ability to control how Odom carried out his duties as general manager.

We need not go through the entire employment test because, as noted earlier, we do not believe Odom's status as an employee is in question and we do not believe the analysis is necessary to this appeal.  We nevertheless discussed two prongs of the test for the purpose of illustrating the difficulty the ALC faced in understanding and unpacking this situation.

Odom's final argument is that PEBA breached fiduciary duties owed to him because PEBA did not act impartially or in good faith in computing his retirement benefits.  Based on our preceding conclusions, we respectfully reject this argument.

For the foregoing reasons, the ALC's decision that the large payments made to Odom at the end of his career are not earnable compensation is

**AFFIRMED.**[1]

**THOMAS, HEWITT, and CURTIS, JJ., concur.**

---

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.