# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

William M. Luce, on behalf of himself and all similarly situated natural persons, Plaintiff,

v.

Lexington County Health Services District, Inc., Brian D. Smith, in both his official and individual capacities; and Lynn Coggins, in both her official and individual capacities, Defendants.

Appellate Case No. 2024-001240

---

## CERTIFIED QUESTION

---

ON CERTIFICATION FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF SOUTH CAROLINA
Mary Geiger Lewis, United States District Judge

---

Opinion No. 28294
Heard April 1, 2025 – Filed August 6, 2025

---

## CERTIFED QUESTION ANSWERED

---

John Hagood Tighe, Matthew Robert Korn, and Shahin Vafai, all of Fisher & Phillips, LLP, of Columbia, for Defendants.

Bryan D. Caskey, of Law Offices of Bryan Caskey, LLC; Jenkins McMillan Mann and Shaun C. Blake, both of Mann Blake & Jackson, all of Columbia, for Plaintiff.

Tina Cundari and Austin Tyler Reed, both of Smith Robinson Holler DuBose Morgan, LLC; Justin Richard Werner and Amber B. Carter, both of the South Carolina Public Employee Benefit Authority, all of Columbia, for Amicus Curiae, South Carolina Public Employee Benefit Authority.

---

**JUSTICE HILL:** We accepted a certified question from the United States District Court for the District of South Carolina, asking whether certain shift-differential and other pay received by an employee participating in the South Carolina Retirement System (SCRS) constitutes "earnable compensation," making the pay subject to mandatory employee contributions to the SCRS. We hold the pay at issue is earnable compensation.

## I.

William M. Luce is a Certified Registered Nurse Anesthetist who worked for Lexington County Medical Center (LMC). LMC paid Luce and similarly-situated salaried healthcare workers more per hour for certain undesirable shifts and for working beyond their scheduled hours. For example, when Luce worked over the weekend or on a holiday, he received an additional $10.00 per hour for his time on those shifts. When he worked over five hours after three p.m., he received an additional $5.00 per hour. Luce received $20.00 per hour for being on-call and between $130.00 and $175.00 per hour when he worked beyond his scheduled hours. The parties refer to the holiday, weekend, shift-differential, on-call, call-back, and premium pay received by Luce and similarly-situated salaried healthcare workers as the "Wages in Controversy."

Luce brought this class action lawsuit against LMC and some of its human resource officers in federal district court. He alleges LMC's withholding of a percentage of his and other "Putative Class" members' Wages in Controversy and remitting this percentage to SCRS violates the Takings Clause of both the federal and state constitutions, as well as the South Carolina Payment of Wages Act. Because the

merits of Luce's lawsuit may turn on whether the Wages in Controversy are subject to mandatory employee contributions under the SCRS Act, the district court certified the following question to us:

> Are the Wages in Controversy that Luce and other Putative Class Members earned during employment with LMC "earnable compensation" subject to employer deductions under S.C. Code Ann. § 9-1-1020 [(2019)]?

## II.

The SCRS Act defines "earnable compensation," in relevant part, as follows:

> "Earnable compensation" means the full rate of the compensation that would be payable to a member if the member worked the member's full normal working time; when compensation includes maintenance, fees, and other things of value the board shall fix the value of that part of the compensation not paid in money directly by the employer.

S.C. Code Ann. § 9-1-10(8)(a) (2019).[1]

Section 9-1-1020 requires an employer to deduct a percentage of an employee's "earnable compensation" and remit it to SCRS. The relevant portion of § 9-1-1020 states:

> Payments for unused sick leave, single special payments at retirement, bonus and incentive-type payments, or any other payments not considered a part of the regular salary base are not compensation for which contributions are deductible.

---

[1] The parties agree in their Joint Stipulation of Facts that Luce is exempt from the Fair Labor Standards Act's (FLSA's) overtime payment requirements; therefore, the exception to earnable compensation for "overtime pay not mandated by the employer" in § 9-1-10(8)(b) of the South Carolina Code (2019), is not at issue in this case.

The term "earnable compensation" is central to many aspects of how benefits are accrued, funded and paid under the SCRS. The retirement benefits due to an SCRS member are based upon a member's "average final compensation," a figure that is based on the member's earnable compensation. § 9-1-1020. Likewise, the amount of a member's earnable compensation directly affects the percentage contributions the employer and the member must make to the SCRS. *Id.* It is essential to the fiscal and actuarial health of the SCRS that its benefit provisions are interpreted in a consistent and fair manner. *See Kennedy v. S.C. Ret. Sys.*, 345 S.C. 339, 353, 549 S.E.2d 243, 250 (2001) ("Absolute equality of treatment to similarly situated beneficiaries is the hallmark of a qualified defined benefits pension plan.").

Luce's position is unusual. He had already retired and was receiving monthly SCRS benefits when he resumed working at LMC in 2019. Although working further for an SCRS member would not increase his monthly SCRS retirement benefits, he and LMC were still required to contribute a percentage of his earnable compensation to SCRS.

Pointing to his paycheck that states his "Regular Base Pay" is calculated on eighty hours, Luce insists that any time worked beyond eighty hours is consequently not "earnable compensation" because that time exceeds his "full normal working time." He contends this conclusion is reinforced by § 9-1-1020, which excludes "other payments not considered a part of the regular salary base" from earnable compensation. He further argues the Wages in Controversy are "incentive type-payments" contemplated by section 9-1-1020 because LMC offered him the incentive of extra pay to work these hours.

The SCRS Act "should be liberally construed in favor of those to be benefited and the objects sought to be accomplished." *King v. S.C. Ret. Sys.*, 319 S.C. 373, 376, 461 S.E.2d 822, 823 (1995). The "SCRS is also 'administered under an elaborate statutory and constitutional scheme designed to protect the independence, integrity and actuarial soundness of the funds.'" *Duvall v. S.C. Budget & Control Bd.*, 377 S.C. 36, 41, 659 S.E.2d 125, 127 (2008) (quoting *Wehle v. S.C. Ret. Sys.*, 363 S.C. 394, 399, 611 S.E.2d 240, 242 (2005)).

"The primary rule of statutory construction is to ascertain and effectuate the intent of the Legislature." *Id.* at 42, 659 S.E.2d at 127. "When construing statutory language, the statute must be read as a whole, and sections which are part of the same general statutory law must be construed together and each one given effect."

*Id.*

The best way to decide what is "earnable compensation" is by considering what it is not. Section 9-1-1020 tells us that earnable compensation does not include payments "for unused sick leave, single special payments at retirement, bonus and incentive-type payments, or any other payments not considered a part of the regular salary base." This phrase describes atypical payments that are irregular. It describes compensation above and beyond the "full rate of the compensation" due to an employee for working his "full normal working time." § 9-1-10(8)(a). The repeated use of the word "full" in § 9-1-10(8)(a) is significant, for it tells us that the statute is concerned with defining the pay an employee has earned for all the hours he works.

Construing the SCRS Act as a whole, we conclude the types of pay excludable from "earnable compensation" are those singular, often one-time payments given to employees on top of the regular salary they are paid for the hours they normally work. We do not interpret the phrase "regular salary base" as the pay for the minimum number of hours an employee normally works, but as the wages the employee receives for his "full normal working time." The bonus and other payments described earlier in § 9-1-1020 have little to do with the quantity of an employee's work. In § 9-1-1020, the Legislature is acknowledging that public employees have a base salary for the hours they work and also may receive bonuses and similar payments according to their achievements. *See, e.g.*, S.C. Code Ann. § 8-11-920 (2019) (discussing "base salary" for public employees).

For example, under the general provisions for public officers and employees, the Legislature has authorized state agencies to create "group productivity incentive programs" for their employees. S.C. Code Ann. § 8-1-170 (2019). Under § 8-1-170, these incentive program payments are a "bonus" that "shall not become a part of the employee's base salary and shall not be considered as compensation in terms of contributions to and determination of benefits for any of the state's retirement systems." § 8-1-170; *see also* S.C. Code Ann. § 59-101-610 (2020) (authorizing bonuses for public university employees and stating "[t]his payment is not a part of the employee's base salary and is not earnable compensation for purposes of employee and employer contributions to the respective retirement systems"); § 8-11-920(4) (authorizing bonuses for state employees "who have performance ratings of 'meets performance requirements'" but stating "[t]his payment is not a part of the employee's base salary and is not earnable compensation for purposes of employer or employee contributions to the respective retirement systems").

The meaning of words may be known by the company they keep. In the paragraph of § 9-1-1020 relevant here, all of the payments referenced deal with payments akin to bonuses, incentive pay, and accrued benefits. It would be a leap to say that the residual "any other payments" clause includes a radically different kind of payment (e.g., shift-differential pay) than the kinds it has just listed. This calls to mind the interpretive canon *esjudem genesis* (of the same kind, class or nature), which holds that, when general words follow specific ones, the general term is interpreted as only including things of the same kind and class as the specific. *See Aiken v. S.C. Dep't of Revenue*, 429 S.C. 414, 420, 839 S.E.2d 96, 99 (2020) (describing doctrine). For example, a statute defining "motor vehicle" as including "an automobile, automobile truck, automobile wagon, motor cycle, or any other self-propelled vehicle not designed for running on rails" was interpreted to not include airplanes. *McBoyle v. United States*, 283 U.S. 25, 26–27 (1931) (Holmes, J.). The canon is one of context and common sense. It is an aid in diagnosing meaning just as medical doctors are mindful of context and surroundings when they make a diagnosis by remembering the adage "if you hear hoofbeats in Texas, think horses, not zebras." We think context is persuasive here, for the very next thing § 9-1-1020 mentions after the residual phrase is the extent to which "unused annual leave" may be claimed as earnable compensation. Shift-differential pay and the other wages in controversy are of a distinctly different type and kind.

What is earnable compensation does not depend upon the label the employer puts on different types of work shifts or on a line of a paycheck. We are mindful that hundreds of employers participate in the SCRS, and many use unique terminology and pay structures. Although the Wages in Controversy carry various labels stuck on them by LMC (e.g., "call back" and "shift differential"), they are all pay for hours worked. Therefore, they constitute "earnable compensation" within the meaning of § 9-1-10(8).

## III.

Accordingly, we conclude Luce's Wages in Controversy are "earnable compensation" as contemplated by the SCRS Act and are therefore subject to mandatory employer deductions under § 9-1-1020.

**CERTIFIED QUESTION ANSWERED.**

**KITTREDGE, C.J., FEW, JAMES and VERDIN, JJ., concur.**